UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-20003-Civ-TORRES

NARCISA PEREZ CHAVEZ,

       Plaintiff,

v.

BERNARDA M. ARANCEDO,

       Defendant.
_____/

## OMNIBUS ORDER ON DISCOVERY MOTIONS

This matter is before the Court on Defendant's Motion for Protective Order and Plaintiff's Motion to Compel Defendant's Deposition and for Sanctions. [D.E. 37-38]. Having reviewed the motions, responses, replies, relevant authority, and record evidence submitted in support of or in opposition to the same, the Court's rulings on each motion follows.

### *I.    BACKGROUND*

This action involves Plaintiff's allegations that Defendant violated the Fair Labor Standards Act (the "FLSA") and the Florida Minimum Wage Act. Plaintiff claims that she had an employee relationship with Defendant and that her earnings fell below both the Federal and Florida minimum wage for the services she performed for Defendant at Defendant's personal residence. Defendant denies the allegations and the matter is currently set for trial on October 9, 2018 with a discovery deadline of June 28, 2018.

1

## II. APPLICABLE LEGAL PRINCIPLES AND LAW

"Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. Good cause "generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). The Eleventh Circuit has identified four factors to consider in determining the existence of good cause: "'[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1205 (11th Cir. 1985).

In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order. *See Farnsworth v. Center for Disease Control,* 758 F.2d 1545, 1547 (11th Cir. 1985) ("While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach under the Rule.") (citations omitted). While a court has broad discretion to fashion a protective order, a "'court must articulate its reasons for granting a protective order sufficient for appellate review.'" *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (citations omitted); *see also Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) ("Rule 26(c) provides that upon a showing of good cause, a court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' The party

seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order.") (citations omitted).

## III. ANALYSIS

### A. *<u>Defendant's Motion for a Protective Order</u>*

The gist of Defendant's motion for a Protective Order is that Plaintiff unilaterally set Defendant's deposition for June 13, 2017 when Plaintiff understood that Defendant would be unavailable to attend. Defendant asserts that Plaintiff refused to set the date for Defendant's deposition on June 15, 2017, or on another date when Defendant indicated that she would be available in August or September. As such, Defendant moves for a Protective Order on the basis that Defendant did not simply refuse to appear for her deposition; rather Plaintiff allegedly scheduled Defendant's deposition when Plaintiff clearly knew that Defendant would be unavailable to attend.

In response, Plaintiff argues that Defendant's Motion lacks merit, in part, because Defendant filed a motion for Protective Order at the eleventh hour to a properly scheduled and noticed deposition. Plaintiff also contends that Defendant failed to appear for the deposition and that the Court had not yet ruled on Defendant's motion for Protective Order. Because Defendant did not attend the deposition scheduled on June 13, 2017, Plaintiff took a certificate of non-appearance for Defendant's failure to appear. Defendant's failure has allegedly resulted in

3

wasted attorney preparation time, including unnecessary costs for a court reporter and translator.

Furthermore, Plaintiff suggests that the dispute over Defendant's deposition date is evidence of Defendant's continued bad faith litigation tactics so as to effectively "burn out" necessary discovery and prejudice Plaintiff's ability to prosecute this case. Plaintiff believes that Defendant had no justification to waste approximately 4-5 months of discovery and prejudice Plaintiff by Defendant purposefully failing to appear for a deposition. Because Defendant caused a significant last-minute burden on Plaintiff's calendar, Plaintiff requests that Defendant pay attorney's fees and costs for the failure to appear at the scheduled deposition date. In order to resolve Defendant's Motion, we turn our attention to the email correspondence that sets forth the chain of events leading to the scheduling of Defendant's deposition for June 13, 2017. [D.E. 37-1, 37-2].

On April 4, 2017, Plaintiff sent a draft notice of taking the Defendant's deposition. In that email, Plaintiff proposed dates to depose Defendant in the month of April. Defense counsel responded on April 5, 2017 and stated that Defendant's deposition would have to take place in May or June. Later that same day, Plaintiff sent an email suggesting that she would be available on May 11, May 15, or May 18 to depose Defendant.

On May 3, 2017 – the date of the Rule 26(f) conference – Plaintiff's counsel sent another draft notice of taking the Defendant's deposition and proposed either June 5 or June 7 as a deposition date. Plaintiff demanded that Defendant's

4

deposition take place no later than mid-June. Defense counsel informed Plaintiff on May 5 that Defendant would be out of the country for the two dates in June that Plaintiff proposed. Plaintiff responded on May 8 that Defendant should provide alternative dates for Defendant's depositions and reiterated that the deposition should occur no later than mid-June. Later that afternoon, Defendant responded that she would propose alternative dates for Defendant's deposition. Approximately five minutes later, Plaintiff stated that if she did not receive proposed dates by noon on May 9 then Plaintiff would unilaterally set the date for Defendant's deposition. Defendant again responded on May 8 and explained that (1) Defendant was travelling internationally and was unavailable to provide dates, (2) Defendant would provide dates as soon as reasonably possible, (3) requested that Plaintiff's counsel not unilaterally set Defendant's deposition, and (4) reminded Plaintiff that trial was not until September/October 2018.

On May 10, Plaintiff emailed Defendant and attached Plaintiff's notice of taking Defendant's deposition for June 8, 2017. Plaintiff indicated that if this date did not work for Defendant, then Defendant should provide alternative dates by no later than May 12 for the deposition to occur by mid-June. Defendant responded on May 12 that she would propose dates for the deposition by the end of the day or on May 13. As promised, on May 13, Defendant explained to Plaintiff that the Defendant would not be available on June 8 because Defendant would be travelling out of the country. However, Defendant proposed June 15 as an available date for a deposition and suggested that the deposition could also be scheduled at some time

5

between August 25 and September 5, or after September 22. In the same email, Defendant proposed scheduling Plaintiff's deposition for June 13.

On May 15, Plaintiff indicated that she would not be available on June 15 to depose the Defendant. Yet, Plaintiff re-noticed the Defendant's deposition for June 13 because Defendant purportedly suggested that she would be available on that date. Defendant responded later that afternoon and requested that Plaintiff confer before unilaterally setting deposition dates. Defendant also clarified that everyone would be available on June 15, but that *only defense counsel* would be available on June 13, which is allegedly why Defendant proposed the latter date for Plaintiff's deposition. Plaintiff replied again on May 15 and asserted that she would not set a date for Plaintiff's deposition because Plaintiff was the first to ask for dates and Defendant allegedly refused to provide dates for many weeks. The final emails between the parties occurred on May 17 where the parties continued to disagree about the date for Defendant's deposition.

There is no doubt that the dispute between the parties in connection with the scheduling of Defendant's deposition could have been easily avoided. As the emails indicate, there was an ongoing dispute on the scheduling of Defendant's deposition. The most relevant communication between the parties occurred when defense counsel emailed Plaintiff on May 15 and explained that Defendant would not be available on June 13 because Defendant would be travelling abroad. Defense counsel clarified that the proposal to take Plaintiff's deposition on June 13 was only because defense counsel would be available – not the Defendant. Defense counsel

6

further stated that everyone could be present for June 15, but reiterated that only defense counsel could be present for June 13. Plaintiff's response to that email demonstrated that Plaintiff understood that June 13 was not an available date for the Defendant's deposition. Yet, Plaintiff refused to accommodate another date and wrote to Defendant: "[s]hould you wish to provide me with dates for the depositions to occur before June 14 for us to reset the Defendants [sic] depositions we can work with you on re-setting. Absent same, we intend to proceed as noticed." [D.E. 37-2].

After a thorough review of the communications between the parties and the arguments presented, we find that Plaintiff had no legitimate reason to unilaterally schedule Defendant's deposition for June 13. Defendant's email on May 15 was clear that only defense counsel would be available on June 13, which is why Defendant proposed June 13 to depose Plaintiff. Instead of attempting to accommodate Defendant, Plaintiff expressed frustration that Plaintiff might be deposed before Defendant and unilaterally set June 13 for Defendant's deposition. Plaintiff appears to have taken issue with Defendant's unavailability and the possibility that Plaintiff might be deposed first because Plaintiff was allegedly the first party to request dates. As such, Plaintiff unilaterally scheduled Defendant's deposition despite repeated emails from defense counsel that the Defendant would be out of the country and unable to attend.

The facts presented are closely related to those in *Karakis v. Foreva Jens Inc.*, 2009 WL 113456, at \*6 (S.D. Fla. Jan. 19, 2009). In *Karakis*, a deponent did not appear for a unilaterally scheduled deposition. Before the deposition, the deponent

indicated to Plaintiff's counsel that he would be unavailable due to scheduling conflicts and requested that the deposition be rescheduled at a mutually convenient time. The Court found that the unilateral scheduling of depositions was a serious concern and that the practice often leads to unnecessary motions and a waste of everyone's time:

> The Court views with concern the unilateral scheduling of depositions absent the inability of the parties, after a good faith effort, to agree on mutually convenient dates. The unilateral setting of depositions (especially coupled with an unwillingness by counsel to reschedule the deposition date) leads to the filing of unnecessary motions, as demonstrated in this case. Such motions are a waste of the parties' time and money, as well as a waste of scare judicial resources.

*Id.* at *6.

The same reasoning applies here. By failing to reach an appropriate compromise on the scheduling of Defendant's deposition, Defendant filed a motion for Protective Order and Plaintiff filed a corresponding motion for sanctions – both of which have resulted in waste of the parties' time and the Court's judicial resources. Both motions could have been easily resolved between the parties. And contrary to Plaintiff's assertions, Defendant never refused to appear for a deposition. Defendant merely offered June 15, 2017 as an available deposition date, including any date between August 25 and September 5, 2015, or any date after September 22, 2017. Plaintiff simply did not appreciate Defendant's response and unilaterally scheduled Defendant's deposition for a date that Defendant would obviously not appear. As a result, Plaintiff accumulated unnecessary costs for a court reporter and translator when Plaintiff knew that Defendant would not attend.

Plaintiff's position is further weakened by the fact that Plaintiff suffered no prejudice by Defendant's unavailability because the discovery deadline does not expire until nearly one year later – i.e. June 28, 2018. .

In any event, the parties are directed to strictly comply with both the Federal and Local Rules in scheduling depositions and to accommodate the calendars of opposing lawyers. Because Defendant (1) attempted to accommodate Plaintiff's demands for a deposition date, (2) carefully explained to Plaintiff that June 13, 2017 was not an available date, and (3) Plaintiff went ahead and unilaterally noticed Defendant's deposition anyway, we find that there is good cause supporting Defendant's Motion for Protective Order. As such, Defendant's Motion is **GRANTED**. In scheduling future depositions, neither party may *unilaterally* set any depositions in this case without prior leave of court. A failure to adhere to this requirement may result in sanctions.

### B. *Plaintiff's Motion to Compel Defendant's Deposition and Sanctions*

In connection with the same facts set forth above, Plaintiff filed a Motion to Compel Defendant's deposition and sanctions on June 15, 2017. [D.E. 38]. Specifically, Plaintiff requested that Defendant's deposition be compelled to occur no later than July 1, 2017 and that Plaintiff be awarded fees and costs associated with the filing of the motion, all related, work, preparation for Defendant's deposition, any costs associated with the certificate of non-appearance, and the costs of a translator.

9

In response, Defendant argues that Plaintiff has not carried her burden of proof nor met established legal criteria for either an order compelling Defendant's deposition or an award of sanctions since the scheduling conflict was completely avoidable. Defendant contends that the emails between the parties could not have been clearer in that only defense counsel would be available on June 13, 2017 – not the Defendant. As such, Defendant alleges that Plaintiff has in bad faith continued to threaten to unilaterally set the Defendant's deposition on dates Plaintiff's counsel knows Defendant is unavailable, and Defendant is scheduled not to be in the United States. Therefore, Defendant requests that the Court (1) deny Plaintiff's Motion, (2) find that Plaintiff has failed to meet the requirements set forth in Federal Rule of Civil Procedure 37, (3) require Plaintiff's counsel to reasonably accommodate Defendant's and Defendant's counsel's calendars and schedule Defendant's deposition to occur on a mutually agreeable date, and (4) deny any sanctions against Defendant, including costs and fees incurred by Plaintiff's counsel related to Plaintiff's Motion.

"Federal Rules of Civil Procedure 37(d) authorizes the imposition of sanctions, including dismissal, for a complete failure to appear for a deposition after being served with notice" and provides that "[n]o prior court order is required for Rule 37(d) sanctions." *United States v. One Lot of U.S. Currency Totalling $506,537.00*, 628 F. Supp. 1473, 1476 (S.D. Fla. 1986) (alterations in original). Rule 37(d)(3) also makes clear that the imposition of reasonable fees and costs are

10

mandatory unless the failure to appear was substantially justified or other circumstances make an award unjust:

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3).

Without rehashing all of the email communications set forth above, we find that Defendant was substantially justified in not appearing for the deposition that Plaintiff unilaterally set in this case. There was no confusion that Defendant was out of the country on June 13, 2017, and that only defense counsel could be present on that date. Nonetheless, Plaintiff scheduled Defendant's deposition out of frustration and incurred unnecessary costs and fees. Plaintiff's Motion lacks any merit because there was absolutely no justification for unilaterally setting Defendant's deposition on a date that Defendant was obviously unavailable to appear. And Plaintiff's conduct was also unwarranted because the discovery deadline in this action does not end until June 28, 2018. As such, Plaintiff's Motion is **DENIED** and the parties are directed to work in a professional and cooperative manner on a date mutually convenient for both parties. A failure to do so may result in sanctions.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

A. Defendant's Motion for a Protective Order is **GRANTED**. [D.E. 37].

B. Plaintiff's Motion to Compel Defendant's Deposition and Sanctions is **DENIED**. [D.E. 38].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of July, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge