UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 17-20003-CIV-TORRES
[CONSENT CASE]

NARCISA PEREZ CHAVEZ,           )
                                )
                Plaintiff,      )
        vs.                     )
                                )
BERNARDA M ARANCEDO,            )
                                )
                Defendant.      )
_____ )

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, NARCISA PEREZ CHAVEZ, by and through undersigned counsel, and moves for partial summary judgment as follows:

1.  This matter includes claims that sound under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201-216 and Florida law/Florida Constitution, Florida Statute § 448.110, for unpaid minimum wages owed to Plaintiff, a live-in domestic worker, as a matter of law. [DE7].

2.  Plaintiff moves for Summary Judgment and asks the Court to find that: (a) FLSA coverage/subject matter jurisdiction exists for the relevant time period; (b) the individual Defendant, BERNARDA M ARANCEDO ("Defendant"), was Plaintiff's individual "employer" as a matter of law; (c) Plaintiff was Defendant's "employee" under the Act and not an independent contractor; and (d) Defendant's cost-credit arguments to reduce damages sought by Plaintiff should be rejected as a matter of law as Defendant is now attempting to exploit the credit post-employment.

3.  For the reasons set forth *infra*, Plaintiff moves for Partial Summary Judgment and asks the Court to enter judgment in favor of Plaintiff.

1

<u>**MEMORANDUM OF LAW**</u>

<u>**Summary Judgment Standard.**</u>

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…."  *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, \*3-4 (M.D. Fla. 2006).

**A.  <u>FLSA Coverage/Subject-Matter Jurisdiction Exists For The Relevant Time Period.</u>**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought pursuant to The Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (section #216 for jurisdictional placement). *See also,* 29 U.S.C. § 206(a)(1)("Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates except as otherwise provided in this section, not less than…$7.25 an hour, beginning 24 months after that 60th day…"). 29 U.S.C. 202(a) states "[t]hat Congress further finds that the employment of persons in domestic service in households affects commerce." 29 C.F.R. 552.99 states "Congress in section 2(a) of the Act specifically found that the employment of persons in domestic service in households affects commerce. In the legislative history it was pointed out that employees in domestic service employment handle goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce

and also that they free members of the household to themselves to engage in activities in interstate commerce (S. Rep. 93-690, pp. 21-22). The Senate Committee on Labor and Public Welfare "took note of the expanded use of the interstate commerce clause by the Supreme Court in numerous recent cases (particularly *Katzenbach v. McClung*, 379 U.S. 294 (1964))," and concluded "that coverage of domestic employees is a vital step in the direction of ensuring that all workers affecting interstate commerce are protected by the Fair Labor Standards Act" (S. Rep. 93-690, pp. 21-22)."

FLSA coverage/subject matter jurisdiction exists for the relevant time period as Plaintiff was employed by Defendant as a domestic service employee. Defendant's residence is a house located in Key Biscayne, Florida. Dft. Depo. Trans. P.11, L.14-22. Plaintiff worked for the Defendant from on or about January 23, 2012 through on or about December 30, 2016, as a domestic live-in housekeeper at Defendant's residence. Pl. Aff. ¶4. Defendant purchased all the materials Plaintiff needed and used in order to complete her job duties (i.e. cleaning supplies, detergent, etc.). Dft. Depo. Trans. P.84, L.9-19. All items used to maintain Defendants' home were supplied by Defendant (i.e. duster, mop, vacuum, iron and ironing board, kitchen supplies/pots/pans, etc.). Pl. Aff. ¶15. Plaintiff regularly and recurrently handled goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce (i.e. Tide, Windex, Clorox, Palmolive, Fabuloso, Suavetel, etc.). Pl. Aff. ¶16.

Plaintiff's work as a live-in domestic worker for the Defendant affected interstate commerce for the relevant time period because the materials and goods that Plaintiff handled and/or used on a constant and/or continual basis and/or that were supplied to Plaintiff by the Defendant to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same. Plaintiff's work for the Defendant was actually in and/or so closely

3

related to the movement of commerce while she worked for the Defendant that the Fair Labor Standards Act applies to Plaintiff's work for the Defendant. Therefore, no genuine issue of material fact exists that Plaintiff's work for Defendant is covered under the Fair Labor Standards Act for the relevant time period as a matter of law.

**B.  The Individual Defendant Was Plaintiff's FLSA Employer As A Matter Of Law.**

The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973). "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511. Financial control over a corporation is a significant factor in determining "employer" status.  *See, Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc*., 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991).

4

Defendant interviewed Plaintiff on or about January 2012, told Plaintiff her job duties, wages, and schedule, and ultimately hired Plaintiff. Dft. Depo. Trans. P.31, L.22-32, L.1; P.33, L.22-P.34, L.8; P.39, L.5-10, L.24-P.41, L.24; *See also,* Pl. Depo. Trans. P.104, L.10-P.105, L.9. Defendant and Plaintiff met in person at Defendant's residence approximately one (1) week prior to Defendant hiring Plaintiff and the Parties discussed the position Defendant had for Plaintiff to live in Defendant's residence and work for Defendant as a domestic worker. Pl. Aff. ¶6. In this initial meeting, Defendant told Plaintiff that a requirement of the job was to live at the Defendant's residence from Monday through to and including Friday, and on some weeks Monday through to and including Saturday, as needed. Pl. Aff. ¶6. Additionally, Defendant told Plaintiff that she would be required to work Monday through to and including Friday, and sometimes on Saturdays as well; Defendant told Plaintiff that she was required to be ready to work at 6:00 a.m. Pl. Aff. ¶7.

Plaintiff's primary duty was to clean and maintain Defendant's home as well as perform house-keeping (i.e. laundry, etc.) duties. Pl. Aff. ¶15. The Defendant would pay Plaintiff weekly and controlled the nature and degree of work performed by Plaintiff. Pl. Aff. ¶26. During the relevant time period, Defendant was Plaintiff's employer who was responsible for paying Plaintiff's wages, controlled Plaintiff's work and schedule, instructed Plaintiff on her job duties, and regularly oversaw Plaintiff's work and the quality of same. Pl. Aff. ¶11. The Defendant would constantly check, observe, and supervise the quality of Plaintiff's work and would sometimes instruct Plaintiff to re-do same. Pl. Aff. ¶26. Plaintiff's daily job duties required of her by Defendant included, but were not limited to, waking up Defendant's three (3) children, making Defendant's children's breakfasts and dinner, then cleaning up after Defendant's children. Pl. Aff. ¶12. Plaintiff was also responsible for maintaining the cleanliness of the outside

5

areas of the home including the patio, garden, watering plants and flowers, and cleaning windows on the outside of the house. Pl. Aff. ¶12. Additionally, Plaintiff was responsible for the cleanliness of the interior of the house, including making the beds in all the rooms, changing and cleaning the sheets, washing, cleaning, folding and putting away clothes for all five (5) family members as well as ironing the clothes as necessary, sweeping all fourteen (14) rooms in the home, mopping, cleaning the kitchen, picking up and cleaning up after the children (i.e. putting away their gaming devices, etc.), preparing and serving dinner to Defendant's children, washing dishes, and other domestic duties. Pl. Aff. ¶12; *See also,* Dft. Depo. Trans. P.31, L.6-21; P.33, L.2-8; P.38, L.23-P.39, L.3; P.64, L.20-22; P.65, L.9-15; *See also,* Benjamin Depo. Trans. P.18, L.5-17; P.19, L.15-20; Joaquin Depo. Trans. P.12, L.8-P.13, L.8.

For the relevant time period, Plaintiff worked Monday through to and including Thursday from approximately 6:00 a.m. through to approximately 9:00 p.m. Pl. Aff. ¶17; *See also,* Pl. Depo. Trans. P.15, L.19-23; P.16, L.11-14; P.105, L.25-P.106, L.12. Plaintiff also would work on Fridays from approximately 6:00 a.m. through to and including 7:00 p.m. Pl. Aff. ¶17. Plaintiff also worked on average, twice per month, on Saturday from approximately 7:00 a.m. through to and including approximately 12:00 p.m. Pl. Aff. ¶17. Therefore, Plaintiff worked an average of seventy-five (75) hours a week for Defendant as Plaintiff's best estimate for the time Plaintiff worked for Defendant. Pl. Aff. ¶17; *See also,* Pl. Depo. Trans. P.98, L.9-P.99, L.20. During these hours, Plaintiff's time was spent predominantly for Defendant's benefit and Plaintiff was regularly expected to be home and available as needed by Defendant during these work hours. Pl. Aff. ¶18.

Defendant would regularly call for updates on the progress of the construction work, how Defendant's son was, and other issues related to the general going-ons in the house. Pl. Aff. ¶13.

During the relevant time period, while Defendant was in Argentina, Defendant gave permission to her friend(s) to stay in Defendant's residence (i.e. Paula Curutchet) and Plaintiff was required to maintain the cleanliness of Defendant's residence, attend to the guests needs, and continue to do my regular domestic duties. Pl. Aff. ¶8; *See also,* Pl. Depo. Trans. P.44, L.18-24. Plaintiff would also have to gather Defendant's mail and give it to Paula Curutchet on a weekly basis when she came to review same. Pl. Aff. ¶8; *See also,* Pl. Depo. Trans. P.43, L.25-P.44, L.7. Plaintiff was also required to assist with the care of Defendant's son who stayed in the residence including preparing breakfast, washing clothes, cleaning the bathrooms and bedrooms, ironing clothes, moping the floors, vacuuming, cooking meals, cleaning the patio floor, and dusting. Pl. Aff. ¶9.

Under the law set forth *supra* and such facts demonstrate that the individual Defendant BERNARDA M ARANCEDO was Plaintiff's individual FLSA employer as a matter of law.

### C. Plaintiff Was An "Employee" Under the Act And Not An Independent Contractor.

Plaintiff was not an independent contractor during the relevant time period, but rather was as "employee" as defined the FLSA and FMWA. An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d).  An employment relationship is decided by applying the "economic realties test." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (D. Fla 2001).   In applying the "economic realities test," the Court should consider the following factors: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skills; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the

service rendered required a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *See, Santelices, supra*

Defendant interviewed Plaintiff on or about January 2012, told Plaintiff her job duties, wages, and schedule, and ultimately hired Plaintiff. Dft. Depo. Trans. P.31, L.22-32, L.1; P.33, L.22-P.34, L.8; P.39, L.5-10, L.24-P.41, L.24; *See also,* Pl. Depo. Trans. P.104, L.10-P.105, L.9. Defendant and Plaintiff met in person at Defendant's residence approximately one (1) week prior to Defendant hiring Plaintiff and the Parties discussed the position Defendant had for Plaintiff to live in Defendant's residence and work for Defendant as a domestic worker. Pl. Aff. ¶6. In this initial meeting, Defendant told Plaintiff that a requirement of the job was to live at the Defendant's residence from Monday through to and including Friday, and on some weeks Monday through to and including Saturday, as needed. Pl. Aff. ¶6. Additionally, Defendant told Plaintiff that she would be required to work Monday through to and including Friday, and sometimes on Saturdays as well; Defendant told Plaintiff that she was required to be ready to work at 6:00 a.m. Pl. Aff. ¶7. Plaintiff was advised by Defendant that her rate of pay would be Four Hundred and Fifty Dollars ($450.00) per week in cash. Pl. Aff. ¶7; *See also,* Dft. Depo. Trans. P.47, L.5-14. For the years 2012 through to and including 2016, Plaintiff was paid $450/week in cash by Defendant. Pl. Aff. ¶20. Plaintiff was, therefore, paid an average of $6.00/hour by Defendant ($450 per week/75 hours per week = $6.00/hour). Pl. Aff. ¶20. The facts in this case show that Plaintiff was never an independent contractor, but rather was always Defendant's "employee" pursuant to the economic realities test *infra*. The facts show that Defendant, controlled the manner in which Plaintiff performed her work for Defendant.

Plaintiff was employed by Defendant as a live-in domestic service worker in Defendant's

residence/household. Pl. Aff. ¶16. Plaintiff's primary duty was to clean and maintain

Defendant's home as well as perform house-keeping (i.e. laundry, etc.) duties. Pl. Aff. ¶15. The

Defendant would pay Plaintiff weekly and controlled the nature and degree of work performed

by Plaintiff. Pl. Aff. ¶26. During the relevant time period, Defendant was Plaintiff's employer

who was responsible for paying Plaintiff's wages, controlled Plaintiff's work and schedule,

instructed Plaintiff on her job duties, and regularly oversaw Plaintiff's work and the quality of

same. Pl. Aff. ¶11. The Defendant would constantly check, observe, and supervise the quality of

Plaintiff's work and would sometimes instruct Plaintiff to re-do same. Pl. Aff. ¶26.

Plaintiff's daily job duties required of her by Defendant included, but were not limited to,

waking up Defendant's three (3) children, making Defendant's children's breakfasts and dinner,

then cleaning up after Defendant's children. Pl. Aff. ¶12. Plaintiff was also responsible for

maintaining the cleanliness of the outside areas of the home including the patio, garden, watering

plants and flowers, and cleaning windows on the outside of the house. Pl. Aff. ¶12. Additionally,

Plaintiff was responsible for the cleanliness of the interior of the house, including making the

beds in all the rooms, changing and cleaning the sheets, washing, cleaning, folding and putting

away clothes for all five (5) family members as well as ironing the clothes as necessary,

sweeping all fourteen (14) rooms in the home, mopping, cleaning the kitchen, picking up and

cleaning up after the children (i.e. putting away their gaming devices, etc.), preparing and

serving dinner to Defendant's children, washing dishes, and other domestic duties. Pl. Aff. ¶12;

*See also,* Dft. Depo. Trans. P.31, L.6-21; P.33, L.2-8; P.38, L.23-P.39, L.3; P.64, L.20-22; P.65,

L.9-15; *See also,* Benjamin Depo. Trans. P.18, L.5-17; P.19, L.15-20; Joaquin Depo. Trans.

P.12, L.8-P.13, L.8.

For the relevant time period, Plaintiff worked Monday through to and including Thursday

from approximately 6:00 a.m. through to approximately 9:00 p.m. Pl. Aff. ¶17; *See also,* Pl.

Depo. Trans. P.15, L.19-23; P.16, L.11-14; P.105, L.25-P.106, L.12. Plaintiff also would work

on Fridays from approximately 6:00 a.m. through to and including 7:00 p.m. Pl. Aff. ¶17.

Plaintiff also worked on average, twice per month, on Saturday from approximately 7:00 a.m.

through to and including approximately 12:00 p.m. Pl. Aff. ¶17. Therefore, Plaintiff worked an

average of seventy-five (75) hours a week for Defendant as Plaintiff's best estimate for the time

Plaintiff worked for Defendant. Pl. Aff. ¶17; *See also,* Pl. Depo. Trans. P.98, L.9-P.99, L.20.

Under prongs (1) and (5) of *Santelices supra*, such evidence shows Plaintiff was an FLSA

employee and that the employer/Defendant exercised control over Plaintiff.

During these hours, Plaintiff's time was spent predominantly for Defendant's benefit and

Plaintiff was regularly expected to be home and available as needed by Defendant during these

work hours. Pl. Aff. ¶18. Plaintiff was regularly expected to remain at the Defendant's home

during Plaintiff's work hours (regardless of whether Plaintiff was performing physical tasks),

and Plaintiff's liberty was restricted by Defendant during these hours. Pl. Aff. ¶18. Plaintiff was

told by Defendant that Plaintiff was required to keep an eye on the house and stay there during

Defendant's trips to Argentina. Pl. Aff. ¶7. During the relevant time, when Defendant was not

present (i.e. was travelling to Argentina, etc.), Defendant gave Plaintiff permission to be at

Defendant's residence. Pl. Aff. ¶13. In Defendant's absence, Plaintiff was required by Defendant

to be present at her residence to ensure the property was not vandalized, to be present when

packages were delivered, to answer phone calls, and attend to other domestic duties (i.e.

cleaning, ironing, etc.). Pl. Aff. ¶13; *See also,* Pl. Depo. Trans. P.104, L.3-9(Plaintiff was

required to work even when Defendant was absent from the residence).

During the relevant time period, Defendant had construction work done to her home and

had construction workers in Defendant's residence; the construction work often occurred while Defendant was away in Argentina. Pl. Aff. ¶14; *See also,* Pl. Depo. Trans. P.19, L.10-22; P.101, L.2-P.102, L.6; P.103, L.6-10. Plaintiff was required by Defendant to ensure that the construction workers were working, were not going into parts of the property they were not permitted to go into, and other general safety maintenance. Pl. Aff. ¶13. Defendant would regularly call for updates on the progress of the construction work, how Defendant's son was, and other issues related to the general going-ons in the house. Pl. Aff. ¶13.

During the relevant time period, while Defendant was in Argentina, Defendant gave permission to her friend(s) to stay in Defendant's residence (i.e. Paula Curutchet) and Plaintiff was required to maintain the cleanliness of Defendant's residence, attend to the guests needs, and continue to do my regular domestic duties. Pl. Aff. ¶8; *See also,* Pl. Depo. Trans. P.44, L.18-24. Plaintiff would also have to gather Defendant's mail and give it to Paula Curutchet on a weekly basis when she came to review same. Pl. Aff. ¶8; *See also,* Pl. Depo. Trans. P.43, L.25-P.44, L.7. Plaintiff was also required to assist with the care of Defendant's son who stayed in the residence including preparing breakfast, washing clothes, cleaning the bathrooms and bedrooms, ironing clothes, moping the floors, vacuuming, cooking meals, cleaning the patio floor, and dusting. Pl. Aff. ¶9. Under the economic realities test *supra*, Plaintiff was an employee (not an independent contractor) due to the nature and degree of control of the Plaintiff by the Defendants. *See, prong 1 of Santelices, supra.* Defendants controlled the nature and degree of work performed by Plaintiff. All of the above facts show Plaintiff was an employee, who was dependent on Defendant economically. Under the economic realities test, such demonstrates Plaintiff was an employee as she was economically dependent on the Defendant. *See Apolinar infra.*

In *Jeanneret v. Aron's East Coast Towing*, 2002 U.S. App. Lexis 27699 (11th Cir. 2002),

the Appellate Court affirmed the District Court's definition of an employer and employee under the FLSA. "Section 203(d) of the FLSA defines an "employer" as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' It further defines 'employee' as 'any individual employed by and employer.'" *Id*. at 6. "To 'employ' means 'to suffer or permit to work." *Id.* The court states that a determination of employment status under the FLSA is a question of federal law. *Id.* Whether an employment relationship exits under the FLSA must be judged by the 'economic realities' of the individual case and not by traditional common-law principles. *Id*. Furthermore, economic dependence determines the employer/employee relationship under the Act. *See, Apolinar Martinez-Mendoza et.al. v. Champion International Corporation*, 16 Fla. L. Weekly Fed. C945, (11th Cir. 2003).

Plaintiff was completely economically dependent on the Defendant for her livelihood. Pl. Aff. ¶26. The work that Plaintiff did was for Defendant, and Plaintiff's tasks performed were central and integral in relation to the running of Defendant's residence. Pl. Aff. ¶29. Under prongs (2) of *Santelices supra*, such evidence shows Plaintiff did not have opportunities for profit or loss depending on her managerial skills as Plaintiff was not in a manager role. Plaintiff was economically dependent on the employer under *Martinez-Mendoza v. Champion Int'l Corp., infra.* Defendant invested in the equipment and materials used by Plaintiff to perform the work required of her by Defendant. During Plaintiff's employment, Plaintiff regularly used equipment and tools that belonged to Defendant, all of which were necessary to complete Plaintiff's duties. Pl. Aff. ¶15. Defendant purchased all the materials Plaintiff needed and used in order to complete her job duties (i.e. cleaning supplies, detergent, etc.). Dft. Depo. Trans. P.84, L.9-19. All items used to maintain Defendants' home were supplied by Defendant (i.e. duster, mop, vacuum, iron and ironing board, kitchen supplies/pots/pans, etc.). Pl. Aff. ¶15. Plaintiff regularly and

recurrently handled goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce (i.e. Tide, Windex, Clorox, Palmolive, Fabuloso, Suavetel, etc.). Pl. Aff. ¶16. If additional supplies were needed, Defendant would provide Plaintiff with her credit card to purchase said additional supplies. Pl. Aff. ¶15.

Plaintiff did not have any special skills to perform her job duties. Dft. Depo. Trans. P.87, L.16-17; *See also,* Pl. Aff. ¶27. Plaintiff did not supervise anyone and had no management duties of any kind. Pl. Aff. ¶31. Plaintiff did not have the opportunity for profit or loss depending on her managerial skills. Dft. Depo. Trans. P.87, L.21-P.88, L.14; *See also,* Pl. Aff. ¶28. Plaintiff did not have the opportunity in my position to increase/maximize her income. Pl. Aff. ¶31. Plaintiff was not authorized to hire any "helpers" and Plaintiff never paid any "helpers" to assist in Plaintiff's job duties and the completion of same. Pl. Aff. ¶31. Therefore, the facts set forth above regarding the several prongs under *Santelices supra,* establish that the Plaintiff was an employee (not independent contractor) of Defendant as a matter of law.

### D. Defendant Is Not Entitled To Any Cost-Credit Arguments To Reduce Damages Sought By Plaintiff As A Matter Of Law.

As their First, Second and Eighth Affirmative Defenses [DE15], Defendant, pursuant to 29 U.S.C. § 203(m), assert that they are entitled to a cost credit for room, board, and other benefits customarily furnished by Defendant provided to Plaintiff during the course of her employment with Defendant. 29 U.S.C. § 203(m) provides in part:

> "Wage" paid to any employee includes the reasonable cost, **as determined by the Administrator**, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: *Provided*, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement

> applicable to the particular employee: *Provided further*, **That the Secretary is authorized to determine the fair value of such board**, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of actual measure of cost in determining the wage paid to any employee…. [Emphasis added].

29 U.S.C. 203 (q) provides for the definition of secretary as used within the statute and defines as ""Secretary" means the Secretary of Labor" or known to most as the department of labor.

In the present case, Defendant did not contact the department of labor or follow the procedures necessary for the secretary of labor to determine the reasonable costs of room and board as set forth in 29 C.F.R. § 531.4 (reasonable cost) and 29 C.F.R. § 531.5 (fair value). Dft. Depo. Trans. P.62, L.1-9; *See also,* Pl. Aff. ¶23. Defendant never contacted the Department of Labor (or anyone else for that matter) to determine if Plaintiff was being paid in accordance with the overtime wage laws. Dft. Depo. Trans. P.74, L.17-P.79, L.13; P.79, L.21-24; P.81, L.24-P.82, L.16.  Plaintiff was never given the option of receiving additional pay in lieu of receiving room and board and Plaintiff was never told that room and board would be part of her pay. Dft. Depo. Trans. P.61, L.10-16, L.20-25; P.62, L.13-23; P.90, L.6-10. Certainly Defendant never obtained any authorization or determination from the Secretary or anyone else at the DOL regarding credits Defendant seeks in relation to Plaintiff's wages.

As set forth in footnote 13 in *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 475 (11th Cir. 1982):

> Both s 3(m) of the FLSA and the regulations provide for requests by employers for a determination of reasonable cost by the Administrator. In fact, 29 C.F.R. s 531.4(a) (1981) establishes a specific procedure to facilitate such determinations by the

14

> Administrator. As the court in Morgan v. Atlantic Coastline R.
> Co., supra, indicated, the burden of invoking the Administrator's
> assistance is on the employer. Id. at 619.

*Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 475 (11th Cir. 1982). In the case at bar, any cost credit that Defendants seek has not been substantiated. Defendants have failed to maintain records or otherwise establish by credible evidence the "reasonable cost" or "fair value" of meals, lodging or other facilities claimed by defendants to have been furnished their employees for any period relevant to this action. *Marshall v. Debord d/b/a Bernies Rest Haven* 84 LC P33,721 E.D. Okla No. 77-106- (1978). In order that an employer be entitled to credits under Section 3(m) of the Act, the employer has the burden of showing that he has satisfied the conditions imposed under the 3(m) of the Act and Regulations thereunder contained at 29 CFR Part 531.*Marshall v. New Floridian Hotel, Inc.*, 1979 U.S. Dist. LEXIS 10122, 28-30 (S.D. Fla. Aug. 29, 1979). Furthermore, on appeal, the Eleventh Circuit stated that in order to assert a cost credit, the Defendant (employer) must maintain records of the actual cost of said boarding and how it is applied to the wages paid to Plaintiff. *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 473-474 (11th Cir. 1982).

The Parties did not reduce their verbal agreement regarding Plaintiff's employment to a written agreement. Pl. Aff. ¶7; *See also,* Dft. Depo. Trans. P.34, L.18-20; P.36, L.4-10. Plaintiff was hired for the job by Defendant and was required to commence her employment the following Monday. Pl. Aff. ¶6. During the relevant time period, Defendant provided Plaintiff with room and board but it was for Defendant's benefit and convenience. Pl. Aff. ¶22; *See also,* Pl. Depo. Trans. P.106, L.20-24. Plaintiff had a small room, with two twin beds, a small closet, and bathroom and shower. Pl. Aff. ¶22.

Defendant, told Plaintiff that should she be hired and/or accept the job, a requirement of same would be to live in the Defendant's residence because Defendant's children leave the house early in the morning and they need someone to cook them breakfast prior to them leaving for school. Pl. Aff. ¶10. At the time Plaintiff was hired by Defendant, Plaintiff was living with her boyfriend (Ever Carvajal) who Plaintiff could have continued to board with had Defendant not required Plaintiff to live with Defendant as a domestic housekeeper and had Defendant's provided Plaintiff with the option of being paid more wages so that Plaintiff could pay rent instead of living in Defendant's residence. Pl. Aff. ¶10; *See,* Pl. Depo. Trans. P.17, L.17-18; P.99, L.21-25; *See also,* Benjamin Depo. Trans. P.35, L.19-24; Pl. Aff. ¶21.

Plaintiff was not offered to be paid more in wages in lieu of room and board and/or transportation. Dft. Depo. Trans. P.61, L.10-16, L.20-25; P.62, L.13-23; P.90, L.6-10. Plaintiff was not explained that the value of the room and board was part of her wages. Dft. Depo. Trans. P.63, L.3-7; P.82, L.17-21; *See also,* Pl. Aff. ¶21. Defendant did not explain to Plaintiff that Plaintiff's rate of pay was being credited towards the value of her room and board. Dft. Depo. Trans. P.63, L.11-14; *See also,* Pl. Depo. Trans. P.106, L.25-P.107, L.8. Defendant did not have the Department of Labor, a person, or a company appraise the value of Plaintiff's room in Defendant's residence. Dft. Depo. Trans. P.62, L.1-9; *See also,* Pl. Aff. ¶23. Defendant did not consult with the Department of Labor to ensure she was in compliance with the minimum wage laws; in fact, Defendant took no affirmative steps to ensure she was in compliance with the minimum wage laws. Dft. Depo. Trans. P.74, L.17-P.79, L.13; P.79, L.21-24; P.81, L.24-P.82, L.16. *See, Marshall v. New Floridian Hotel, Inc*., 1979 U.S. Dist. LEXIS 10122, 28-30 (S.D. Fla. Aug. 29, 1979) (the Court held that an employer cannot claim a credit where he fails to offer an employee the option of receiving cash instead of the credit the employer).

Nor does Defendant know the value of the food that Plaintiff may have eaten while employed by Defendant and Defendant did not keep any receipts as to the value of the food given to Plaintiff. Defendant did not maintain records of Plaintiff's food consumption; Defendant would only be able to provide an approximation. Dft. Depo. Trans. P.63, L.16-18; P.65, L.25-P.66, L.11; *See also,* Pl. Aff. ¶25. Plaintiff was not offered more in wages so that Plaintiff could pay for her own food instead of eating the food purchased by Defendant. Pl. Aff. ¶24. Defendant did not require Plaintiff to maintain records of her hours worked and did not maintain records regarding same on behalf of Plaintiff. Dft. Depo. Trans. P.67, L.3-6; *See also,* Pl. Aff. ¶19; Pl. Depo. Trans. P.105, L.15-24.

Therefore, Defendant's affirmative defenses [DE15] for room and board fails for at least two reasons: (1) Defendant never complied with the statute and contacted the secretary of labor to make a determination as to the reasonable cost or value of the room and board, and (2) Defendant has no proof as to the reasonable cost or value of said room and board. Defendant has not had the department of labor evaluate the reasonable cost of the room and board Defendant admits that they have not maintained any records. Therefore, any cost credit that Defendant seeks cannot be substantiated. *Marshall v. New Floridian Hotel, Inc.*, 1979 U.S. Dist. LEXIS 10122, 28-30 (S.D. Fla. Aug. 29, 1979). Furthermore, on appeal, the Eleventh Circuit stated that in order to assert a cost credit, the Defendant (employer) must maintain records of the actual cost of said housing and how it is applied to the wages paid to Plaintiff. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473-474 (11th Cir. 1982). Defendant has failed to maintain any records to substantiate a cost credit for room and board. Defendant may claim that they should be allowed to guess or approximate the reasonable cost or value, however, to do so, would obliterate the safe

guards put in place by congress to ensure that the reasonable cost or fair market value is credited and that the employer does not profit by attempting to assert said credit.

> An employer cannot deduct from the cash component of wages more than the "reasonable cost" of the meal as determined by the agency. 29 U.S.C.A. § 203(m). *Cf. Walling v. Peavy-Wilson Lumber Co.,* 49 F.Supp. 846, 862 (W.D.La.1943) (Congress limited the credit to the reasonable cost of the meals to prevent employers from circumventing the minimum wage law and "profiteering" through excessive deductions from cash wages for facilities provided).

*Davis Bros. v. Donovan*, 700 F.2d 1368, 1370-71 (11th Cir. 1983). That is precisely why an employer's guessing as to the reasonable cost or market value is prohibited, and why the secretary of labor must be contacted to determine the fair value. However, even had the secretary been contacted, a determination could not have been made as Defendant has failed to keep any records as to the actual cost. "An employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division does not satisfy the employer's burden of proving reasonable cost." *Id.* (citing *Marshall v. DeBord,* 84 Lab.Cas. ¶ 33,721, at 48,476 (E.D.Okla.1978))." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513-14 (11th Cir. 1993). Defendant does not provide itemized receipts so that the Court is able to obtain how much food was allegedly consumed by Plaintiff and, thus, the Court is also unable to determine the amount of "reasonable costs" to be applied in the reduction of Plaintiff's wages, if any, and Defendant is now attempting to exploit the credit post employment. *See also, Chao v. Min Fang Yang*, No. 05–2563, 2007 WL 7209596, at *6 (W.D. Tenn. Aug. 13, 2007) (prohibiting employer from taking a section 3(m) credit where the employer "failed to make or keep records as required by 29 C.F.R. § 516.27 with respect to the cost of providing meals and

lodging, or the requirement of maintaining records of any deductions claimed on a weekly basis"). As to 552.100(c) regarding meals, Defendant never maintained any receipts regarding the food Plaintiff alleged consumed.  As the DOL stated in an Opinion Letter, "[a]ny employer who furnishes meals, lodging, or other facilities to employees as wages must maintain the records required in section 516.27 of 29 CFR Part 516 (copy enclosed). Bills, purchase orders, and cash register tapes may be appropriate for such purpose."   Opinion Letter Fair Labor Standards Act (FLSA), 1994 WL 1004832, at *2.  Also, in *Marshall v. New Floridian Hotel, Inc*., 1979 U.S. Dist. LEXIS 10122, 28-30 (S.D. Fla. Aug. 29, 1979), the court held that an employer cannot claim a credit where he fails to offer an employee the option of receiving cash instead of the credit the employer. Defendant has not shown any evidence that Plaintiff was provided the option of receiving cash instead of the credit alleged by Defendant. In this matter, the Court should not allow Defendant to offset any minimum wages she may owe Plaintiff, by arguing that they allegedly paid for Plaintiff's board. *See, Morrison v. Executive Aircraft Refinishing, Inc*., 434 F. Supp. 2d 1314, 1322 (S.D. Fla. 2005); *Dunlop v. Gray–Goto, Inc.,* 528 F.2d 792, 794 (10th Cir.1976); *Futrell v. Columbia Club, Inc.,* 338 F.Supp. 566, 573 (D.C.Ind.1971); *Hiner v. Penn–Harris–Madison Sch. Corp.,* 256 F.Supp.2d 854, 860 (N.D.Ind.2003); *Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901, 913–14 (9th Cir.2004); *see Donovan v. Pointon,* 717 F.2d 1320, 1323 (10th Cir.1983).

Also, as a general matter, with respect to setoffs, the former Fifth Circuit stated that "Set-offs against back pay awards deprive the employee of the "cash in hand" contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions…" *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974). However "[a] later Fifth Circuit case, *Singer v. City of Waco, Tex.*, 324 F.3d 813, 828 n.9 (5th Cir. 2003)

pointed out that *Brennan* does not prohibit a set-off when the set-off will not cause a plaintiff's wages to dip below the statutory minimum." *Nelson v. CK Nelson, Inc*., 2008 U.S. Dist. LEXIS 43544 (S.D. Fla. June 2, 2008). Although the plaintiff in *Morrison* was a painter, Plaintiff requests this Court to analogously apply the same reasoning to the case at bar, because Defendant is attempting to implement the same impact to reduce Plaintiff's recoverable minimum wages. "Unlike *Singer*, the set-off (and counterclaim) asserted does not involve an overpayment of wages by Defendants to Plaintiff, but instead damages allegedly caused by Plaintiff to a residence. In other words, allowing such a set-off would invariably cause Plaintiff not to receive the overtime payments he was allegedly entitled to under the FLSA." *Nelson v. CK Nelson, Inc*., 2008 U.S. Dist. LEXIS 43544 (S.D. Fla. June 2, 2008). Furthermore, as noted in footnote 5, the cases that allow setoff did not perform any analysis as to the *Brennan* decision. *Nelson v. CK Nelson, Inc.,* 2008 U.S. Dist. LEXIS 43544, 11-12 (S.D. Fla. June 2, 2008). Therefore, in this matter, while Defendant hopes to add or credit the cost of transportation to the Plaintiff's wages, it cannot be done. Defendant cannot offset any minimum wages she may owe the Plaintiff by arguing that she furnished Plaintiff with transportation. Plaintiff was not offered to be paid more in wages in lieu of room and board and/or transportation. Dft. Depo. Trans. P.61, L.10-16, L.20-25; P.62, L.13-23; P.90, L.6-10. As Defendant has failed to follow any of the procedural requirements or set forth any evidence as to the actual cost or fair value, Defendant has failed to carry her burden. Based on the aforesaid law and facts, Defendant should not be permitted to offset Plaintiff's damages by arguing a cost credit.  Defendant, *inter alia*, failed to maintain the legally required records, did not get a formal appraisal, and Plaintiff did not realize that the unit was allegedly to be included as part of her wages. *See also, Robles, et al. v. Acebo Roofing Corp., et al.,* Case No.: 16-21817-CIV-FAM/O'SULLIVAN [DE51 & 54].

**WHEREFORE,** Plaintiff respectfully requests that the Court enter Summary Judgment in favor of Plaintiff and find that: (a) FLSA coverage/subject matter jurisdiction exists for the relevant time period; (b) the individual Defendant, BERNARDA M ARANCEDO ("Defendant"), was Plaintiff's individual "employer" as a matter of law; (c) Plaintiff was Defendant's "employee" under the Act and not an independent contractor; and (d) Defendant's cost-credit arguments to reduce damages sought by Plaintiff should be rejected as a matter of law as Defendant is now attempting to exploit the credit post-employment.

Respectfully submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF
300-71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
305-865-6766
305-865-7167

By:_s/ Rivkah F. Jaff, Esq. ___
    Rivkah F. Jaff, Esquire
    Florida Bar No.: 107511

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY THAT A TRUE AND CORRECT
COPY OF THE FOREGOING WAS PROVIDED VIA CM/ECF ON 7/2/18 TO:**

**JAMES D. WHISENAND, ESQ.
WHISENAND & TURNER, P.A.
501 BRICKELL KEY DRIVE, SUITE 602
MIAMI, FL 33131
PH: 305-375-8484
FAX: 305-374-2919
EMAIL: AL@W-TGROUP.COM**

**BY:_____/s/ Rivkah F. Jaff_____
        RIVKAH F. JAFF, ESQ.**

21