**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 17-20003-CIV-TORRES**

**[CONSENT TO MAGISTRATE JUDGE]**

| | |
|---|---|
| NARCISA PEREZ CHAVEZ, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| BERNARDA M ARANCEDO, | ) |
| | ) |
| Defendant. | ) |
| —————————————————— | ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

CASE NO.: 17-20003-CIV-TORRES

COMES NOW Defendant Bernarda Maria Arancedo ("Defendant"), by and through her undersigned counsel, and files pursuant to Federal Rule of Civil Procedure 56  this Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [DE 66] ("Motion") ("Response"), and in support thereof states as follows:

**I. Summary**

1. Plaintiff's Motion should be denied because:

    a. Plaintiff's Motion does not: meet the Fed. R. Civ. P. 56 requirements of no genuine issue of material fact, governing legal standards requiring the Court to interpret fact and legal matters adverse to Plaintiff and favorable to Defendant, Plaintiff's supporting affidavit is materially self-contradicted by Plaintiff's own deposition testimony and Plaintiff's sworn declarations [signed and filed under penalty of perjury], Plaintiff signed and filed in public court records to obtain personal benefits, is a final summary judgment depriving Defendant of her right to trial and is not a partial summary judgment as styled, is based on conclusory not ultimate fact statements which not supporting information, and is based on mere conclusions of law.

    b. Plaintiff's June 13, 2018 Declaration[1] ("Plaintiff's MPSJ Declaration") and Plaintiff's Statement of Facts attached to Plaintiff's Motion ("Plaintiff's Statement of Facts") materially and internally conflict[2] with (i) Plaintiff's prior September 29, 2017 Deposition testimony, and (ii) Plaintiff's prior sworn (under penalty of perjury) declaration of residence to the exclusion of all others dated June 19, 2015 filed in the Miami-Dade County, Florida court records ("Plaintiff's Declaration of Residence to the Exclusion of All Others[3]"). In addition and

---

[1] Plaintiff filed Plaintiff's June 13, 2018 MPSJ Declaration on July 2, 2018, after the discovery deadline expired on June 28, 2018 and presents new alleged material facts depriving  of the right to cross-examine Plaintiff as to the truth of these facts.

[2] "The Eleventh Circuit held that 'a district court may find an affidavit which contradicts deposition testimony a sham when the party merely contradicts its prior testimony without giving any valid explanation.'" See *Dimingo v. Midnight Xpress, Inc.*, No. CV 17-23010-CIV, 2018 WL 3235535, at *2 (S.D. Fla. July 2, 2018). Therefore, this Court should disregard the false and contradictory statements provided by Plaintiff's MPSJ Declaration. Either Plaintiff's MPSJ Declaration or Plaintiff's Sworn Declaration of Residence to the Exclusion of All Others or both are false sworn statements. Plaintiff wrongfully seeks benefits from her false sworn statements.

[3] On June 19, 2015 Plaintiff filed a sworn declaration stating her sole residence to the exclusion of all others (under penalty of perjury), In the self-initiated 2015 sworn declaration filed with the Clerk of the Court, Plaintiff stated that her <u>actual legal residence … to the exclusion of all</u>

2

in all respects, Plaintiff's MPSJ Declaration and Plaintiff's Statement of Facts are also contradicted by (i) Defendants' deposition testimony and supporting declaration and (ii) the depositions and supporting declarations of five fact witnesses Santiago Avendaño, Benjamin Avendaño, and Joaquin Avendaño and independent third party fact witness depositions of Paula Curutchet and Monica Arriazu and see charts below at paragraph 4.

c. Plaintiff's Motion is a wrongful attempt by Plaintiff to receive full dispositive summary judgment on the elements of Plaintiff's Claims in her Amended Complaint [DE4] and to deprive Defendant of her right to trial. The Honorable Judge James Lawrence King of the Southern District of Florida ruled that when there are genuine issues of material fact, "[t]he Court is not permitted to weigh the evidence . . .  when ruling on a motion for summary judgment [or partial summary judgment]. To do so would be an impermissible invasion of the province of the jury." See *Mella v. Ahmadzai*, No. 12-CV-23654-JLK, 2013 WL 12064509, at *2 (S.D. Fla. Sept. 5, 2013) (where Judge King denied a motion for partial summary judgment when there were genuine issues of material fact on FLSA claims on hours worked and on claiming credits for meals, lodging and transportation provided to Plaintiff against the minimum wage.)

d. Plaintiff's MPSJ Declaration and Plaintiff's Statement of Facts are substantially nothing more than conclusions of law[4] or conclusory fact statements with no support in the record and not the required ultimate facts and are to be decided by the trier of fact and not on summary judgment as per Fed. R. Civ. P. 56.

e. Plaintiff's Counsel did not conduct appropriate due diligence prior to filing Plaintiff's Complaint[5]. Had Plaintiff's Counsel conduced such due diligence prior to filing Plaintiff's Claims, they would have known that Plaintiff filed Plaintiff's Declaration of Residence to the Exclusion of All Others to the Exclusion of All Others which is in direct

---

others" was "1051 N.W. 2 Street, Apt.9". (e.s). This sworn statement is recorded Miami Dade County Florida public records OR at Book 29664 Page 3759. See Exhibit 1.

[4] See Plaintiff's Declaration Paragraphs 4, 6, 7, 8, 10 – 13, 15 – 22, 24, and 26 – 29 and Plaintiff's Statement of Facts Paragraphs 2, 3, 5, 6 - 9, 12 - 15, 17 - 20, 25, 27, 29, 30, 32, 34 – 40, 43, 47, 50, 51, 55, 57, 60, and 61.

[5] See Plaintiff's Deposition P. 32 lines 5 – 14 where Plaintiff testified she first met Plaintiff's Counsel  on January 2, 2018, the same day the Complaint was filed; therefore, Plaintiff's Counsel did not undertake adequate fact and conduct due diligence on the merits of Plaintiff's Claims prior to filing the January 2, 2018 Complaint.

material contradiction with Plaintiff's Claims that she was a "live-in domestic service employee" of Plaintiff from on or about January 23, 2012 to on or about December 30, 2016.

f. . Plaintiff's own false and self-contradictory statements compel denial of Plaintiffs Motion in addition to the material conflicts by Defendant's sworn statements, and five other fact witnesses' sworn statements that are in material conflict with Plaintiff's false statements. See charts below at paragraph 5.

## II. Fact Summary -- Summary of Genuine Issues of Material Facts & Conclusions of Law

2.   From January 23, 2012 to December 30, 2016, Plaintiff was not hired as Defendant's employee, she was an independent contractor with an arrangement with Defendant where Plaintiff requested $450 per week in cash with a room available for her for her sole benefit and convenience and for her use at her discretion for personal reasons ("Room for Plaintiff's Benefit") at Defendant's Key Biscayne, Florida House ("Defendant's House") and with unrestricted access to food for Plaintiff to purchase using Defendant's credit card and which would be available to her to consume at her convenience ("Food Plaintiff Elected to Consume") ("Plaintiff's Independent Contractor Arrangement")

3.   From on or about July, 2014 to December 30, 2016, Defendant, and her two teenage sons of ages approximately 15-17 and 17-19 years of age, stayed in Argentina ("Substantial Time Period Family Stayed in Argentina") On or about September 2015, Defendant's adult son departed to New York to attend college and thereafter stayed in Argentina and then Wellington, Florida ("Substantial Time Period Adult Son Away For College"). During the time period when Defendant and her teenage/adult sons stayed in Defendant's House, they would travel for the holidays including but not limited to approximately one month during the Christmas holiday, the Thanksgiving holiday, and approximately one month in April in each year ("Vacation Travel Dates") (These time period, collectively ("Substantial Time Family Away")).

4.   Plaintiff, pursuant to Plaintiff's Independent Contractor Arrangement, (i)  was contracted to perform specific tasks which were limited to making four beds, cleaning three bathrooms, changing towels and sheets, washing and ironing, and dusting, as needed, depending on whether Defendant and her teenage/adult sons were staying in  Defendant's House or not ("Limited Contracted Tasks"); these tasks were completed within two hours +/-; and (ii) had no set days or hours she was required to work and was otherwise free to come and go as she pleased from Defendant's House and attend to personal errands is she wished and indeed she did attend

to personal errands and performed work for other persons (such as Guillermo Martinez and possibly others) for her personal financial benefit. During the Substantial Time Period Family Stayed in Argentina, Substantial Time Period Adult Son Away For College, and Vacation Travel Dates, if Plaintiff elected to stay in Room for Plaintiff's Benefit, Plaintiff had considerably less tasks to be completed from the Limited Contracted Tasks ("Very Limited Contracted Tasks"). Defendant had arrangements with her friend Paula Curutchet, gardeners, remodelers, and a part-time person to attend to the other areas of and the overall taking care of Defendant's House.

**Plaintiff's Conclusions of Law Asserted as Undisputed Facts**

| Plf'sConclusions of Law Asserted as Undisputed Facts | Disputed Material Fact |
|---|---|
| 1.FLSA/ subject matter jurisdiction applies in this proceeding | 1. Plaintiff was not Defendant's domestic service employee, she was an independent contractor, therefore the FLSA does not apply. 2. Plaintiff was not involved in interstate commerce and is not entitled to individual coverage providing for subject matter jurisdiction. Plaintiff made her own professional decisions – independent of Defendant – as to what if any supplies to purchase. See Dft. Statement of Disputed Genuine Issues of Material Facts to this Response ("Dft's Disputed Facts") ¶ 2, 3, 5, 6, 7, 10, 14, 17, 18, 28, 29, 30, 39, 40, 50, 55 – 57, 59 - 61 |
| 2.Defendant is an "employer" under the FSLA | 1. Defendant was not Plaintiff's Employer, she had an friendly arrangement with Plaintiff as an independent contractor    a. Defendant did not control or supervise Plaintiff    b. Plaintiff determined her rate of pay and method of payment and schedule    c. Defendant did not restrict Plaintiff's liberty to pursue other work or engage in personal errands and had the opportunity to profit. If Plaintiff elected not to seek profit, it was Plaintiff's life style choice. See Dft's Disputed Facts ¶ 2, 3, 5, 6, 7, 10, 14, 17, 18, 28, 29, 30, 39, 40, 50, 55 – 57, 59 – 61 |
| 3.Plaintifff is an "employee" under the FLSA | 2. Plaintiff was not Defendant's employee, she was an independent contractor    a. Defendant did not control or supervise Plaintiff. See Dft's Disputed Facts ¶ 29, 30, 31, 35 - 37, 39, 40, 46,    b. Plaintiff was not completely economically dependent on Defendant. Plaintiff had specific Limited Contracted Tasks and Very Limited Contracted Tasks which were completed in 2 hours +/- and was otherwise free to do as she pleased and seek other opportunities to work, in fact Defendant encouraged Plaintiff to seek other work. If Plaintiff did not seek profit, it was Plaintiff's live style decision. See Dft's Disputed Facts ¶ 12, 28, 50, 55-61    c. Plaintiff had no set days or hours she was required to work. See Dft's Disputed Facts ¶ 6, 8, 9, 35, 36, 37    d. Plaintiff used her special skills and expertise to make decisions and |

| | |
|---|---|
| | select which products and categories of products to purchase for the Limited Contracted Tasks and Very Limited Contracted Tasks. See Dft's Disputed Facts ¶ 50 - 55<br><br>e. Plaintiff's tasks were not central and integral in relation to running Defendant's House; Defendant had arrangements with her friend Paula Curutchet, gardeners, remodelers, and a part-time person to attend to the other areas of Defendant's House and the overall oversight to Defendant's House. See Dft's Disputed Facts ¶ 61 |
| 4. Plaintiff is a covered "live-in domestic worker" | Plaintiff was not Defendant's live-in domestic worker; she was an independent contractor.<br><br>a. Plaintiff was not required to live in Defendant's House but had a Room for Plaintiff's Benefit. Plaintiff stayed in the room so as to not take the bus to and from Defendant's House and filed Plaintiff's Declaration of Residence to the Exclusion of All Others. See Dft's Disputed Facts ¶ 2, 3, 6 - 8, 10, 13 - 16, 19 – 22, 27 - 30, 42, 60<br><br>b. Plaintiff signed Plaintiff's Declaration of Residence to the Exclusion of All Others whereby she swore under penalty of perjury that she did not reside in Defendant's House. See Dft's Disputed Facts ¶ 18 |
| 5. Assuming arguendo the FSLA applies, Defendant is not entitled to any credits for meals and housing as a reduction of Plaintiff's alleged damages | Assuming arguendo the FSLA applies, Defendant is entitled to any credits for meals and lodging as a reduction of Plaintiff's alleged damages.<br><br>a. Plaintiff requested, elected to, and was provided Room for Plaintiff's Benefit and Food Plaintiff Elected to Consume as part of Plaintiff's Independent Contractor Arrangement. See Dft's Disputed Facts ¶ 2, 3, 6 - 8, 10, 13 - 16, 18, 19 – 22, 24, 25, 27 - 30, 42, 60<br><br>b. The credit requirements for meals and housing provided to Plaintiff as determined by the U.S. Dept. of Labor are satisfied, see paragraphs 16 through 27, below. |

**Plaintiff's Misstatement of Undisputed Material Facts**

| Plaintiff's Erroneous Undisputed Facts | Disputed Material Facts |
|---|---|
| 1. Plaintiff resided in the Defendant's House from January 23, 2012 to December 30, 2016. | 1. (a) Plaintiff has made 2 sworn statements as to her residence during 2012- 2016 claiming two different residences. One is false and subject to penalty of perjury. See Dft's Disputed Facts ¶ 18<br><br>(b) Plaintiff's deposition testimony states she stayed at Defendant's House so Plaintiff did not have to take the bus and for Plaintiff's own personal convenience: Plt. Depo 130:8-131:7<br><br>(c) June 19, 2015 Plaintiff filed Plaintiff's Declaration of Residence to the Exclusion of All Others that she resided elsewhere.<br><br>(d) At Plaintiff's deposition, Plaintiff stated her address was the same 1051 N.W. 2 Street Apt. 9. See Plt. Depo at 99:24-100:4<br><br>(e) Defendant's deposition testimony is that Plaintiff did not live at Defendant's House and used the room at Defendant's House for Plaintiff's personal convenience. Depo at 130:8-131:7; Dft Declaration ¶ 11, 26, 35, 36, 39 |
| 2. Plaintiff lived in | 2. (a) On June 19, 2015 Plaintiff filed Plaintiff's Declaration of |

| | |
|---|---|
| Defendant's House as a condition to providing services for Defendant | Residence to the Exclusion of All Others.<br>(b) Defendant told Plaintiff she had the option of not using Defendant's House. See Dft. Depo 84:20-25<br>(c) Plaintiff was free to come and go as she pleased from Defendant's House and attend to personal errands is she wished and indeed she did attend to personal errands and performed work for other persons (such as Guillermo Martinez) for her personal financial benefit and to seek profit. If Plaintiff elected not to do so, it was Plaintiff's life style decision. See Dft's Disputed Facts ¶14, 26, 29, 39,40, 56 - 58, 60 |
| 3. Plaintiff had no opportunity to seek other work and did not do during 2012-2016. | 3. (a) Plaintiff testified that during this time she did other work for Guillermo Martinez. See Plt. Depo 89:21-90:11<br>(b) Independent fact witness Monica Arriazu stated in her deposition that Plaintiff did work for Guillermo Martinez during 2012-2016. See Monica Depo at 21:23-22:2<br>(c) Defendant testified that the time to do Plaintiff's independent contract work at her house took "an hour and a half to two hours" and Plaintiff was free to work other place and in fact did so. Dft. Depo at 39:11-18; See also Dft's Disputed Facts ¶14, 26, 29, 39,40, 56 - 58, 60<br>(d) The decision to not see other profit opportunities was a Plaintiff self-made life style decision. |
| 4. Plaintiff's independent contractor work during 2012-2016 was exactly the same despite no one living at Defendant's House during Substantial Time Family Away or approximately 60% of the Claim time period. | 4. (a) Undisputed that Defendant and her two teenage sons were not staying at Defendant's House during the Substantial Time Period Family Stayed in Argentina  See Dft's Disputed Facts ¶ 1<br>(b) Undisputed that Defendant's adult son stayed away from Defendant's House during the Substantial Time Period Adult Son Away For College and thereafter. See Dft's Disputed Facts ¶ 12<br>(c)  Undisputed that Defendant and her three teenage/adult sons stayed outside of Defendant's House during Vacation Travel Dates. See Dft's Disputed Facts ¶ 12<br>(d) During these time period had Very Limited Contracted Tasks, if any. See Dft's Disputed Facts ¶ 12, 28, 39, 40 - 43, 45 – 49 |
| 5. Plaintiff did not supervise other persons performing similar tasks. | 5. Defendant made an arrangement with Esther Vides to perform similar tasks than Plaintiff's Limited Contracted Tasks as Plaintiff's helper. See Dft's Disputed Facts ¶ 28, 59, 61 |
| 6.Defendant controlled nature, degree and schedule of Plaintiff's work | 6. Plaintiff supervised herself, managed herself, Defendant did not supervise Plaintiffs or controlled Plaintiff's Limited Contracted Tasks and Very Limited Contracted Tasks. See Dft's Disputed Facts ¶ 14, 27, 29, 30, 31, 39, 40, 41, 42, 43, 45, 46, 56 |
| 7. Plaintiff's primary duty was to clean, to maintain, to housekeep Defendant's House | 7. Plaintiff was only contracted for the Limited Contracted Tasks and Very Limited Contracted Tasks, not to generally clean, maintain, to housekeep Defendant's House. See Dft's Disputed Facts ¶12, 28, 50, 55-61 |
| 8.Plaintiff worked an average of 75 hours per week and paid $6.00 per hour from January 2012 – | 8. (a) Defendant and her teenage/adult sons lived out of Defendant's House during the Substantial Time Period Family Stayed in Argentina, Substantial Time Period Adult Son Away For College, and Vacation Travel Dates or approximately 60% of the |

| | |
|---|---|
| December 2016 | Claim time period. See Dft's Disputed Facts ¶ 1, 12<br><br>(b) When Defendant lived in Argentina Plaintiff's had Very Limited Contracted Tasks. See Dft's Disputed Facts ¶ 12, 28, 39, 40 - 43, 45 - 49<br><br>(c) Defendant testified that the time to do Plaintiff's independent contract work at her house took "a hour and a half to two hours" and Plaintiff was free to work other please and in fact did so. Dft. Depo at 39:11-18; See Dft's Disputed Facts ¶14, 26, 29, 39,40, 56 - 58, 60<br><br>(d) Plaintiffs pay was $450 per week, Plaintiff did not work 75 hours per week, and she worked considerably less than 75 hours per week. Plaintiff has no independent corroboration to support this disputed fact. See Dft's Disputed Facts ¶ 12, 38 |
| 9. Plaintiff was expected to be at Defendant's House 6 am–9 pm Monday – Thursday; 6 am–7 pm Friday; and 2 times a month on Saturday 7 am–12 pm for Defendant's convenience | 9. Plaintiff did not have any set days or hours to work and was not asked to or required to, or to work Plaintiff's stated hours, and to Defendant's knowledge never did so work:<br>(a) 6 am – 9 pm Monday – Thursday. See Dft's Disputed Facts ¶ 35<br>(b) 6 am – 7 pm Friday. See Dft's Disputed Facts ¶ 36<br>(c) 2 times a month on Saturday 7 am – 12 pm. See Dft's Disputed Facts ¶ 37 |
| 11. Plaintiff was required to assist with care of Defendant's majority age son who occasionally used Defendant's House between January 23, 2012 to on or about September 2015. | 11. Plaintiff was only responsible for Limited Contracted Tasks and was not otherwise required, or asked to and to Defendant's knowledge never did perform care of or additional tasks for Defendant's majority age son. See Dft's Disputed Facts ¶ 12, 17, 32, 34, 39, 42, 46, 49<br><br>(a) Plaintiff testified in her September 2017 deposition that Defendant's majority age son did not cause Plaintiff to do any additional work. See Plt. Depo 115:23-116:7 |
| 12. Plaintiff was a permanent employee of Defendant | 12. Plaintiff was neither a permanent employee nor employee of Defendant, Plaintiff was an independent contractor.  See Dft's Disputed Facts ¶ 2 |
| 13. Plaintiff's work was an integral part of Defendant's business | 13. Plaintiff's tasks were not central and integral in relation to running Defendant's House; Defendant had arrangements with Paula Curutchet, gardeners, trusted remodelers, and a part-time person to attend to all other all matters related to the overall operation of Defendant's House. See Dft's Disputed Facts ¶ 61 |

## III. Memorandum of Law Compels Denial of Plaintiff's Motion

5.   This Memorandum of Law clearly illustrates that under governing summary judgment (and partial summary judgment) standard that the issues of genuine disputed material facts exist which preclude partial summary judgment as to whether: (1) Plaintiff resided at Defendants Miami house during 2012-2016 and Plaintiff was an independent contractor and therefore whether FLSA Coverage and subject matter jurisdiction exists; (2) Defendant was Plaintiff's employer; (3) Plaintiff was a   live-in domestic service employee and not an independent

CASE NO.: 17-20003-CIV-TORRES

contractor residing at Plaintiff's legally declared residence  at 1051 N.W. 2 Street Apt. 9, Miami, FL 33128 ("Plaintiff's Residence"); and (4) any potential credits against Defendant's payments made to Plaintiff to reduce Plaintiff's alleged damages claim are a genuine material fact dispute and/or should be rejected  as a matter of law and not considered by the trier of fact.[6]

Governing Summary Judgment Standard Compels Denial of Plaintiff's Motion

6.    Courts are clear that "Rule 56(c) of the Federal Rules of Civil Procedure [prohibits] the entry of summary judgment where the pleadings and supporting materials show that there [is a] genuine issue as to any material fact . . . [and therefore] the moving party is [not] entitled to judgment as a matter of law." See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, (1986). "However, all reasonable doubts about the facts should be resolved in favor of the non-movant." See *Clemons v. Dougherty County,* 684 F.2d 1365, 1369 (11th Cir.1982).

> If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Id.* Thus, summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. [citations omitted].

See *Chacon v. El Milagro Child Care Ctr.*, No. 07-22835-CIV-AMS, 2009 WL 2059910, at *2 (S.D. Fla. July 9, 2009). The Southern District of Florida provides that "[a]n action is void of a material issue for trial '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.' See *Quintero v. Lopez*, No. 15-21162-CIV, 2016 WL 7508264, at *2 (S.D. Fla. June 6, 2016). Here there are, in all respects, genuine issues of material fact.

The Honorable Judge James Lawrence King of the Southern District of Florida ruled that when there are genuine issues of material fact, "[t]he Court is not permitted to weigh the evidence . . . when ruling on a motion for summary judgment [or partial summary judgment]. To do so would be an impermissible invasion of the province of the jury." See *Mella v. Ahmadzai*, at *2 (S.D. Fla. Sept. 5, 2013).

7.    Plaintiff's Motion seeks for the Court to make dispositive determinations each based on a base of material disputed facts in all respects and Plaintiff's mere conclusory statements with

---

[6] Plaintiff's Motion seeks to prevent Defendant from the ability to introduce evidence to be weighed by the trier of fact on these issues which are in dispute; therefore Plaintiff's Motion rings of a motion in limine to exclude evidence rather than a partial summary judgment motion. It is not proper for consideration in a motion for partial summary judgment.

CASE NO.: 17-20003-CIV-TORRES

no fact support in the record that: (1) Plaintiff resided at Defendants Miami house during 2012-2016 and Plaintiff was an independent contractor and therefore whether FLSA Coverage and subject matter jurisdiction exists; (2) Defendant was Plaintiff's employer; (3) Plaintiff was a live-in domestic service employee and not an independent contractor residing at Plaintiff's Residence; and (4) any potential credits against Defendant's payments made to Plaintiff to reduce Plaintiff's alleged damages claim should be rejected  as a matter of law and not considered by the trier of fact. However, the Southern District of Florida Courts are clear that the trial Court's function when deciding on a partial summary judgment motion "is not 'to weigh the evidence and determine the truth of the matter [which is the duty of the trier of fact, in this case the jury] but to determine whether there is a genuine issue for trial. [citations omitted]'". See *Id.* at *2 (S.D. Fla. June 6, 2016).

Genuine Issue of Material Facts Exists as to whether: (a) FLSA Coverage and subject matter jurisdiction exists

8.  The Southern District of Florida holds that "[t]o recover minimum wage and/or overtime pay, an <u>employee</u> must first establish he is protected by the FLSA, based on [individual coverage]. See *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298-1299 (11th Cir. 2011)". See *Bautista Hernandez v. Tadala's Nursery, Inc.*, No. 12-61062-CIV, 2013 WL 12043485, at *6 (S.D. Fla. Oct. 21, 2013). (e.s.). "An employee may claim individual FLSA coverage if he 'regularly and 'directly participate[s] in the actual movement of persons or things in interstate commerce.'"  See *Id.* at *6 (S.D. Fla. Oct. 21, 2013). "The burden is on the plaintiff-employee to demonstrate that individual coverage applies. [citations omitted]" See *Dimingo v. Midnight Xpress, Inc.*, No. CV 17-23010-CIV, 2018 WL 3235535, at *5 (S.D. Fla. July 2, 2018).

Here, there are genuine issues of material fact as to whether Plaintiff resided in Defendant's House, was an employee, a domestic service employee, a live-in domestic service employee, or an independent contractor. See paragraphs 12 through 15, below. This genuine issue of material fact is for the trier of fact to weight the evidence, the creditability of the Plaintiff, and make a determination as to whether Plaintiff was an employee covered by the FLSA or not. Under the fact circumstances here, the issue of FLSA Coverage and subject matter jurisdiction is not an issue to be resolved by partial summary judgment; therefore, Plaintiff's Motion should be denied.

9.  Further, the 11th Circuit held that it is appropriate to dismiss an FLSA claim due to lack of FLSA Coverage and subject matter jurisdiction when the basis for such FLSA Coverage and

subject matter jurisdiction is that Plaintiff purchased goods intra-state at a local store even when such goods came from out-of-state. See *Navarro v. Broney Auto. Repairs, Inc.*, 533 F. Supp. 2d 1223, 1226 (S.D. Fla.), aff'd, 314 F. Appx 179 (11th Cir. 2008) providing that "Plaintiff's in-state purchase . . . of out-of-state [goods] are insufficient to establish individual coverage [and therefore FLSA Coverage and subject matter jurisdiction]." (e.s.) Here, Plaintiff's Motion should be denied because there are genuine issues of material fact (and law as per *Navarro*, above) as to whether FLSA Coverage and subject matter jurisdiction exists. Plaintiff's Motion claims that such FLSA Coverage and subject-matter jurisdiction applies because Plaintiff allegedly purchased and handled goods "that have moved in or were produced for interstate commerce." See Plaintiff's Motion, page 3. Not only is that not the correct legal precedent for individual coverage under the FLSA and for subject matter jurisdiction but these genuine issues of material facts are disputed. See Dft's Disputed Facts ¶ 53

<u>Genuine issue of material fact exists as to whether Defendant was Plaintiff's employer</u>

10. The Honorable Edwin G. Torres of the Southern District of Florida provides that in determining under the FLSA whether someone is an employer[7], the

> courts consider the following [eight] factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire or modify the worker's employment conditions; (4) the power to determine the worker's pay rates or methods of payment; (5) the preparation of payroll and payment of worker's wages; (6) the ownership of the facilities where the work occurs; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities.

See *Quezada v. Sante Shipping Lines, Inc.*, No. 11-23246-CIV, 2013 WL 1334516, at *6 (S.D. Fla. Mar. 29, 2013). In *Quezada*, the Court denied summary judgment because there was a genuine issue of material fact about the "level of control … that existed". See *Id*. at *7.

11. Plaintiff's Motion[8] should be denied because it does not meet the summary judgment

---

[7] The question of whether a defendant is an employer is a question of fact and law, however when there are material factual disputes regarding whether someone is an employer or not warrants a denial of Plaintiff's Motion. See *Astudillo v. US News & World Report*, No. 02 CIV.7902 WHP, 2004 WL 2075179, at *4 (S.D.N.Y. Sept. 17, 2004).

[8] The cases provided in Plaintiff's Motion address the issue of whether plaintiff was an employee

standard because there are genuine issues of material fact as to:

   a.  the nature and degree of the putative employer's control of Defendant:

   i.   See Dft's Disputed Facts ¶ 2, 3, 8, 9, 29, 30, 36, 36, 39 providing that Plaintiff had no fixed days of the week or hours she was required to work. See Dft's Disputed Facts ¶26, 27, 39, 40, 41, 56, 57, 59, 60 providing that Plaintiff was free to come and go as she pleased from Defendant's House and attend to personal errands if she wished and indeed she did attend to personal errands.  See Dft's Disputed Facts ¶28, 29, 30, 32, 33, 34, 40, 41, 47, 49 providing that Plaintiff was not an employee but was contracted as an independent contractor to perform only Limited Contracted Tasks and Very Limited Contracted Tasks during the Substantial Time Family Away. See Dft's Disputed Facts ¶ 29, 30 providing that Defendant did not control the nature and degree of work performed by Plaintiff and Plaintiff worked independently. See Dft's Disputed Facts ¶ 40, 41, 42, 43, 45, 46, 47, 48 providing that Plaintiff's liberty was not restricted by Defendant and Plaintiff was not required to stay at Defendant's House.

   b.  the degree of supervision, direct or indirect, of the tasks performed by Defendant:.

   i.   See Dft's Disputed Facts ¶ 29, 30 providing that Plaintiff worked independently and supervised herself. See Dft's Disputed Facts ¶ 31 providing that Defendant would not check, observe, or supervise the quality of Plaintiff's work nor would she instruct Plaintiff to re-do any work.

   c.  the right, directly or indirectly, to hire, fire or modify the worker's employment conditions:

   i.   See Dft's Disputed Facts ¶ 3, 6, 7, 8, 10, 15, 16, 17, 18, 19 – 21, 23, 25, 41, 42, providing that Defendant did not hire Plaintiff as a domestic live-in domestic service employee but rather as an independent contractor where Plaintiff was not required to stay at Defendant' House but was provide the Room for Plaintiff's Benefit. See also Plt. Depo 30:9-22, excerpts attached to Dft's Disputed Facts, where Plaintiff gave three days' notice that she would stop performing the Limited Contracted Tasks and Very Limited Contracted Tasks for Defendant. These are consistent with an independent contractor.

---

when defendant was a corporation allegedly employing plaintiff. Here the fact and governing law circumstances, where Defendant is a house-wife are substantially different than those in the cases provided in Plaintiff's Motion.

d. the power to determine the worker's pay rates or methods of payment.

i. See Dft's Disputed Facts ¶ 10 providing that Plaintiff determined the amount she wanted to be compensated by Defendant for Limited Contracted Tasks and Very Limited Contracted Tasks which was $450 per week in addition to (i) the Room for Plaintiff's Benefit; and (ii) Food Plaintiff Elected to Consume.

e. the preparation of payroll and payment of worker's wages.

i. See Dft's Disputed Facts ¶ 26 providing that there were no payroll or records for work performed because Plaintiff was an independent contractor and not Defendant's employee. There were no set hours or days for Plaintiff to work; Plaintiff was free to do as she wished including working for others which she did and to seek profits and any decision not to do is Plaintiff's personal life style choice. See also Dft's Disputed Facts ¶ 6, 19 providing that Plaintiff did not earn wages because she was an independent contractor and not Defendant's employee.

f. the ownership of the facilities where the work occurs.

i. There were no facilities where work occurred. Defendant was a house-wife and did not run a business in Defendant's House. Plaintiff was provided the Room for Plaintiff's Benefit where she was able to invite people over to stay with her if she wished. See Dft. Depo. 45:9-46:3; 62:13-21.

g. whether the worker performed a line job integral to the end product.

i. Plaintiff did not work in a line job nor was her work integral to the end product. See Dft's Disputed Facts ¶ 61 providing that Plaintiff's Limited Contracted Tasks and Very Limited Contracted Tasks were not central and integral in relation to running Defendant's House. Defendant had other independent contractors provide services and look after Defendant's House including but not limited to Trusted Remodelers, Esther Vides, and gardeners. Defendant had her friend Paula, in her absence from Defendant's House, collect the mail, check on the status of Defendant's House, communicate with other service providers at and overall care of Defendant's House. Plaintiff had limited tasks that could be completed in a maximum of 2 hours +/-.

h. the relative investment in equipment and facilities.

i. See Dft's Disputed Facts ¶ 50 providing that Plaintiff was not Defendant's employee but rather an independent contractor. Plaintiff used her expertise knowledge in her role as Defendant's independent contractor to make the decision and select which products and categories of products to buy, when to buy these products and categories of products, how many

of these products and categories of products to buy and at what price to complete the Limited Contracted Tasks and Very Limited Contracted Tasks.

<u>Genuine issue of material fact exists as to whether Defendant was Plaintiff's employee</u>
 *(a) Plaintiff was an independent contractor and not Defendant's employee*

12. According to the Southern District of Florida binding legal precedent, the FLSA:

> does not apply to independent contractors. [citations omitted] ; *see also Freund v. Hi–Tech Satellite, Inc.,* 185 Fed.Appx. 782, 782 (11th Cir.2006) (affirming determination that an individual was an independent contractor and therefore exempt from the FLSA). . . The Eleventh Circuit has adopted several factors as a guide [the "Economic Realities Test" to determine whether someone is an employee or an independent contractor]: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business. [citation omitted].

See *Altman v. Sterling Caterers, Inc.*, 879 F. Supp. 2d 1375, 1379–80 (S.D. Fla. 2012). (where the Southern District of Florida denied summary judgment when there were genuine issues of material fact disputes as to certain of the Economic Realities Factors). [T]hese six factors are a guide, are not exhaustive and no single factor is dispositive. [citations omitted]." See *Id.* at 1381. "The touchstone of "economic reality" in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency." See *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1318–19 (S.D. Fla. 2001). Dependency is not created by, as here, Plaintiff having the clear and full opportunity to make profit but personally elects not to do based on her life style choices.

13. In *Santelices*, the court denied summary judgment because there was "a material issue of fact exists with regard to the amount of control [the moving party] exerted over [the respondent's] activities during the alleged period of employment" See *Id.*  at 1318–19. Here, Plaintiff's Motion should be denied because there are genuine issues of material facts disputing[9]:

---

[9] The question of whether a plaintiff is an employee or an independent contractor is a question of fact and law, however when there are material factual disputes regarding the Economic Reality Test factors, this warrants a denial of Plaintiff's Motion. See *Swinney v. AMcomm Telecommunications, Inc.*, 30 F. Supp. 3d 629, 633 (E.D. Mich. 2014).

a.  (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

i.  See Dft's Disputed Facts ¶ 2, 3, 8, 9, 29, 30, 36, 36, 39 providing that Plaintiff had no fixed days of the week or hours she was required to work. See Dft's Disputed Facts ¶26, 27, 39, 40, 41, 56, 57, 59, 60 providing that Plaintiff was free to come and go as she pleased from Defendant's House and attend to personal errands if she wished and indeed she did attend to personal errands.  See Dft's Disputed Facts ¶28, 29, 30, 32, 33, 34, 40, 41, 47, 49 providing that Plaintiff was not an employee but was contracted as an independent contractor to perform only Limited Contracted Tasks and Very Limited Contracted Tasks during the Substantial Time Family Away. See Dft's Disputed Facts ¶ 29, 30 providing that Defendant did not control the nature and degree of work performed by Plaintiff and Plaintiff worked independently and supervised herself. See Dft's Disputed Facts ¶ 31 providing that Defendant would not check, observe, or supervise the quality of Plaintiff's work nor would she instruct Plaintiff to re-do any work. See Dft's Disputed Facts ¶ 40, 41, 42, 43, 45, 46, 47, 48 providing that Plaintiff's liberty was not restricted by Defendant and Plaintiff was  not required to stay at Defendant's House.

b. (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

i.  See Dft's Disputed Facts ¶ 14, 26, 28, 29, 39, 40, 56, 57, 58, 60 providing that Plaintiff was not completely economically dependent on Defendant for her livelihood. Plaintiff stayed with her live-in partner outside of Defendant's House. During the alleged hours that Plaintiff claimed she was working for Defendant, because Plaintiff had no fixed schedule or fixed rules, Plaintiff had the opportunity to seek out additional work and profit at her sole discretion and desire. If Plaintiff was unmotivated and chose not to make more money, that is Plaintiff's right in her sole discretion. Plaintiff would leave on Wednesdays to work for somebody else and at least once Plaintiff testified that during this time period, she worked for Guillermo Martinez for her personal benefit and on other days considering the Limited Contracted Tasks and Very Limited Contracted Tasks were completed in a maximum of 2 hours +/-. Indeed, Plaintiff was encouraged by Defendant to seek other work opportunities.

c. (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

i.  See Dft's Disputed Facts ¶ 50 - 55 providing that Plaintiff used her expertise

knowledge in her role as Defendant's independent contractor to make the decision and select which products and categories of products to buy, when to buy these products and categories of products, how many of these products and categories of products to buy and at what price to buy these products and categories of products to complete the Limited Contracted Tasks and Very Limited Contracted Tasks.

     d. (4) whether the service rendered requires a special skill;

        i.  See Dft's Disputed Facts ¶ 55 providing that Plaintiff used her special skills and expertise to complete the Limited Contracted Tasks in two hours +/-. Plaintiff used her special skills in her role as Defendant's independent contractor to make the decision and select which products and categories of products to buy, when to buy these products and categories of products, how many of these products and categories of products to buy and at what price to buy these products and categories of products to complete the Limited Contracted Tasks and Very Limited Contracted Tasks.

     e. (5) the degree of permanency and duration of the working relationship;

        i.  Plaintiff was neither a permanent employee nor employee of Defendant, Plaintiff was an independent contractor.  See Dft's Disputed Facts ¶ 2. That Plaintiff was not permanent with respect to Defendant is clearly illustrated by Plaintiff's own conduct and actions of [during the relevant time period] working for other persons, electing not to seek other profit opportunities for personal life style reasons, and Plaintiff terminating the relationship with 3 days' notice. See Plt. Depo 30:9-22.

     f. (6) the extent to which the service rendered is an integral part of the alleged employer's business.

        i.  See Dft's Disputed Facts ¶ 61 providing that Plaintiff's Limited Contracted Tasks and Very Limited Contracted Tasks were not central and integral in relation to running Defendant's House. Defendant had other independent contractors provide services at Defendant's House including but not limited to Trusted Remodelers, Esther Vides, and gardeners. In her absence, Defendant had her friend Paula, collect the mail, check on the status of Defendant's House, and communicate with other service providers at Defendant's House. Plaintiff had limited tasks that could be completed in a maximum of 2 hours +/-. The overall taking care of Defendant's House was done by others, not Plaintiff. The record is pristine.

(b) *Plaintiff was not Defendant's live-in domestic service employee*

14. Plaintiff's Motion should be denied on the issue of whether Defendant was Plaintiff's live-in domestic service employee because as provided in paragraphs 12 through 13, above, there are genuine issues of material fact preventing a determination that Plaintiff was Defendant's employee.

15. Plaintiff's Motion should be denied on the issue of whether Defendant was Plaintiff's live-in domestic service employee because (i) Plaintiff filed Plaintiff's Declaration of Residence to the Exclusion of All Others and (ii) there is an abundance of genuine issues of material facts confirming Plaintiff did not reside in Defendant's House and she was not required to stay in Defendant's House. As provided in Dft's Disputed Facts ¶ 3, 6, 7, 8, 10, 15, 16, 17, 18, 19 – 21, 23, 25, 41, 42, Defendant did not hire Plaintiff as a domestic live-in domestic service employee but rather as an independent contractor pursuant to Plaintiff's Independent Contractor Arrangement.. Defendant has made 2 sworn statements as to her residence during 2012- 2016 claiming two different residences. One is false and subject to penalty of perjury and clear sanctions. This Court should sanction Plaintiff and Plaintiff's counsel. See Dft's Disputed Facts ¶ 18. Plaintiff's deposition testimony states she stayed at Defendant's House so Plaintiff did not have to take the bus and for Plaintiff's own personal convenience: Plt. Depo 130:8-131:7. At Plaintiff's deposition Plaintiff stated her address was the same 1051 N.W. 2 Street Apt. 9. See Plt. Depo at 99:24-100:4. See Plaintiff's June 18, 2015 sworn Plaintiff's Declaration of Residence to the Exclusion of All Others states the same.

Genuine issue of material fact exists as to applicability of Meal/Lodging Credit

16. Assuming arguendo that Plaintiff was Defendant's employee, genuine issues of material fact exist regarding whether lodging ("Lodging Credit") and food ("Meal Credit") provided to Plaintiff should be considered by the trier of fact to credit against the $450 per week payments made to Plaintiff for hours allegedly worked.

17. The 11th Circuit provides that "Congress, not the judiciary, is empowered to determine this country's minimum wage policy." See *Davis Bros. v. Donovan*, 700 F.2d 1368, 1372 (11th Cir. 1983). The Southern District of Florida defines "wage" in accordance with 29 U.S.C. § 203(m) to include

> the reasonable cost [or fair value], as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities ..." Employers are entitled to credit for the reasonable cost of furnishing certain non-

17

> cash items to Plaintiff such as meals and lodging for the employee's benefit, if the
> employee voluntarily accepts them. 29 C.F.R. § 552.100(b). Meal credits are
> capped at 37.5% of the minimum wage for breakfast, 50% of the minimum wage
> for lunch, and 62.5% of the minimum wage for dinner. 29 C.F.R. § 552.100(c).
> Lodging credits are capped at seven and one-half times the minimum wage for
> each week. 29 C.F.R. § 552.100(d).

See *Barraza v. Pardo*, 985 F. Supp. 2d 1369, 1374 (S.D. Fla. 2013). (e.s.). *Barraza* cites 20

C.F.R. 552.100(d) which also provides that "the employer may take a larger amount *provided,*

*however,* that the employer keep, maintain and preserve records to justify such different cost

figures."

18. Plaintiff's Motion should be denied because, assuming arguendo that Plaintiff is

Defendant's Live-in Domestic Service Employee, the Lodging Credit and Meal Credit applies or

at the very least there are genuine issues of material fact which support the Lodging Credit and

Meal Credit's application compelling a denial of Plaintiff's Motion.

*Lodging Credit Should Be Applied if Plaintiff is a Live-in Domestic Service Employee –*
*Assuming Arguendo that Plaintiff is Defendant's Live-In Domestic Service Employee*

19. The U.S. Dept. of Labor Wage and Hour Division Administrator published guidance

toward applying a Section 3(m) Lodging Credit towards wages under the FLSA ("Lodging

Credit"). See *Credit toward Wages under Section 3(m) of the FLSA for Lodging Provided to*

*Employees*, Field Assistance Bulletin No 2015-1, U.S. Dept of Labor, Wage and Hour Division,

Dec 17 2015 at <https://www.dol.gov/whd/FieldBulletins/fab2015_1.htm> ("Dept. of Labor

Memorandum on Lodging Credit Application"). As provided in the Dept. of Labor

Memorandum on Lodging Credit Application and as provided by the courts, the following five

requirements must be met for the Lodging Credit to be claimed:

> (1) Lodging Credit is "furnished regularly by the employer to his employees or if the
> same or similar facilities are customarily furnished by other employers engaged in the
> same or similar trade, business, or occupation in the same or similar communities."
> 29 C.F.R. § 531.31 [citations omitted]; (2) the employee must "receive the benefits of
> the facility for which he is charged [and] his acceptance of the facility be voluntary
> and uncoerced." [citations omitted.]; (3) the lodging furnished's condition is not
> substandard such that its condition violates federal, state, or local law; (4) the
> employee received the primary benefit of the lodging; and (5) the employer maintains
> accurate records of the costs incurred in furnishing the lodging.

20. Lodging Credit Requirement No. 1 Satisfied. It is undisputed that lodging is regularly

furnished by employers to live-in domestic service employees. The Dept. of Labor Memorandum

on Lodging Credit Application explicitly provides that "Because live-in domestic service employees, for example, often reside at their employer's private homes without paying rent, this requirement is met for these workers." See *Id*. at Section A. Requirements for Claiming a Section 3(m) Credit, subparagraph 1. Lodging Regularly Provided by the Employer or Similar Employers. The facts here are undisputed that Plaintiff stayed in the Room for Plaintiff's Benefit. See Dft. Depo. 32:25-33:4. See Plf. Depo. 130:8-131:7.

21. <u>Lodging Credit Requirement No. 2 Satisfied.</u> The Dept. of Labor Memorandum on Lodging Credit Application provides that "voluntary [and uncoerced] acceptance of a job can be construed as voluntary acceptance of the facilities only when the facilities are integral to performing the job (as with room and board for a live-in housekeeper . . . and the employee understood this when accepting the job." See *Id*. at Section A. Requirements for Claiming a Section 3(m) Credit, subparagraph 2. Voluntary Acceptance citing *Lopez v. Rodriguez*, 668 F.2d 1376 (D.C. Cir. 1981). Here, there are genuine issues of material fact providing that Plaintiff requested the Room for Plaintiff's Benefit from Defendant and such lodging was provided by Defendant. See Dft. Depo. 47:15-20, Dft. Declaration ¶ 10.

22. <u>Lodging Credit Requirement No. 3 Satisfied.</u> It is undisputed that the condition of the Room for Plaintiff's Benefit did not violate federal, state, or local law. The Room for Plaintiff's Benefit consisted of a room with a bathroom, air condition, two beds, two windows and a very large closet. See Dft. Depo 33:2-4. The Room for Plaintiff's Benefit was in accordance with Florida law. See Thania Vernon's Expert Depo. testimony Page 74 lines 12-17, as Exhibit 2.

23. <u>Lodging Credit Requirement No. 4 Satisfied.</u> There are genuine issues of material fact providing that Plaintiff received the primary benefit of the Room for Plaintiff's Benefit so she would not have to take the bus and other Plaintiff's personal reasons. See Plt. Depo at 130:8-131:7 See Dft. Declaration ¶ 10. Further, the Dept. of Labor Memorandum on Lodging Credit Application explicitly provides that [i]n the case of live-in domestic service employees, the Department [of Labor] recognizes that such employees are typically not working all of the time that they are on the premises [and at times engage in private endeavors] such as sleeping, eating, watching television . . . and may leave the premises if they choose." See *Id*. at Section A. Requirements for Claiming a Section 3(m) Credit, subparagraph 4. Primary Beneficiary. The Dept. of Labor Memorandum on Lodging Credit Application highlights that when the live-in domestic service employee has "bona fide off-duty time [is] one factor that may help determine

19

[that the primary benefit of the lodging is the employee's]" See *Id*. Other factors that weighs in the favor that the lodging was for the primary benefit of the employee are when the employee is provided (i) a "separate bedroom that is furnished (with, for example, a bed, night table, and dresser) where the employee is able to leave her belongings and spend her off-duty time. . ." and (ii) "access to a kitchen and a private bathroom. . ." See *Id*. Here, there are genuine issues of material fact analogous to these above factors supporting that Plaintiff received the primary benefit from the Room for Plaintiff's Benefit. See Dft's Disputed Facts ¶26, 27, 39, 40, 41, 56, 57, 59, 60 providing that Plaintiff was free to come and go as she pleased from Defendant's House and attend to personal errands if she wished and indeed she did attend to personal errands.

24. Lodging Credit Requirement No. 5 Satisfied. The Dept. of Labor Memorandum on Lodging Credit Application provides that "in a large house in which a family of five and a home care worker reside, the amount [of the "reasonable cost" or "fair value" of the Lodging Credit] might most appropriately be determined based on the ration of the square footage of the employee's bedroom to the square footage of the entire house." See *Id*. at Section A. Requirements for Claiming a Section 3(m) Credit, subparagraph 5. Accurate Recordkeeping. Here, the fair value of the Room for Plaintiff's Benefit has been calculated by Expert Thania Vernon presenting a genuine issue of material fact as to whether this requirement for Lodging Credit has been satisfied. See Thania Vernon Expert Report (Exhibit 3), Supplemental Expert Report (Exhibit 4). In the alternative, and further supporting that the Lodging Credit should be applied, the Dept. of Labor Memorandum on Lodging Credit Application clearly provides that:

> [w]ith respect to live-in domestic service employees only, <u>an employer that does not provide [records of the costs incurred in furnishing lodging to the employee] may claim a certain amount—up to seven and one-half times the statutory minimum hourly wage for each week lodging is furnished [towards] wages</u> rather than the reasonable cost or fair value of the housing provided. 20 C.F.R. § 552.100(d)

See *Id*. at Section A. Requirements for Claiming a Section 3(m) Credit, subparagraph 5. Accurate Recordkeeping. (e.s.)

25. Here, assuming arguendo that Plaintiff is Defendant's Live-in Domestic Service Employee, it is clear based on the undisputed facts that all five factors are met compelling the application of the Lodging Credit against Plaintiff's alleged "wages" or, at the very least, that sufficient genuine issues of material fact exist with respect to the Lodging Credit.

*Meal Credit Should Be Applied if Plaintiff is a Live-in Domestic Service Employee*

26. "The FLSA is silent as to whether employees must be given a choice of whether to

accept a meal in lieu of a portion of their minimum wage." See *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 916 (6th Cir. 1999). "When Congress has been silent on an issue, as it was in this case, the courts review an agency's implementing regulations to determine whether they constitute a permissible construction of the statute." See *Id*. The 11th Circuit "hold[s] that, as the FLSA currently stands … Congress has allowed employers to take a credit on the cash component of their minimum wage obligation for meals regularly provided even if the employees are not given the continuing option to take cash instead". See *Davis Bros. v. Donovan*, at 1372 (11th Cir. 1983). The "Eleventh Circuit's subsequent decision in *Davis Brothers* demonstrates that the *New Floridian* case is no longer good authority for the proposition that acceptance of facilities furnished under § 203(m) must be voluntary" See *Id*. (holding that a Meal Credit deduction is not dependent upon proof that such meals are actually consumed by the employee.) In *Herman*, the court held that when meals were furnished and paid by employer, the Meal Credit should apply. See *Id*. at 919. Here, it is undisputed that during Monday through Friday January 23, 2016 to December 30, 2016, Plaintiff consumed meals for lunch and dinner paid for by Defendant and there are genuine issues of material fact as to whether Plaintiff consumed additional meals. See Plaintiff's MPSJ Declaration ¶ 24 and Plt. Depo 64:10-20; 75:7-11; 79:22-25; 81:18-22; 11:18-21; See Dft. Declaration ¶ 10, 15, 18, 19.

27. "The [Meal Credit related] regulations explicitly provide that '[s]eparate records of the cost of each item furnished to an employee need not be kept." Citing 29 C.F.R. § 516.27(a). See *Id*. Further, in lieu of providing records of the reasonable cost of meals furnished by the employer to the employee which would afford a higher amount of Meal Credit to be applied, 29 C.F.R 552.100(c) provides that the Meal Credit will be accepted at a statutory minimum amount, see block citation in paragraph 21, above. Here, assuming arguendo that Plaintiff is Defendant's Live-in Domestic Service Employee, it is clear based on the undisputed facts that the application of the Meal Credit against Plaintiff's alleged "wages" for the lunch and dinner meals (and possibly other meals) Plaintiff consumed Monday through Friday January 23, 2012 through December 30, 2016 is warranted; or, at the very least, that sufficient genuine issues of material fact exist with respect to the Lodging Credit compelling a denial of Plaintiff's Motion.

WHEREFORE, Defendant respectfully requests that this Court enter an Order: (1) denying Plaintiff's Motion in its entirety; and (2) such other matters as may be just and appropriate under the circumstances.

CASE NO.: 17-20003-CIV-TORRES

Dated: July 16, 2018

Respectfully submitted,
Whisenand & Turner, P.A.
501 Brickell Key Drive, Ste 602
Miami, FL 33131
Tel:  (305) 375-8484 – Fax: (305) 374-2919
Attorneys for Defendant

By:  __/s/ Alan Lemura, Esq. __
       Alan Lemura
       Fla. Bar No.: 122409

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was served by the CM/ECF Portal on this 16th day of July, 2018, upon:  Attorneys for Plaintiff, Neil Tobak, ntobak.zidellpa@gmail.com; K. David Kelly, david.kelly38@rocketmail.com; Rivkah Fay Jaff, rivkah.jaff@gmail.com; Jamie H. Zidell, zabogado@aol.com, J.H. Zidell, P.A., 300 71st Street, Suite 605, Miami Beach, FL 33141.

By:  __/s/ Alan Lemura, Esq. __
       Alan Lemura
       Fla. Bar No.: 122409