**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-20003-Civ-TORRES

NARCISA PEREZ CHAVEZ,

 Plaintiff,

v.

BERNARDA M ARANCEDO,

 Defendant.

_____/

**ORDER ON PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

 This matter is before the Court on Narcisa Perez Chavez's ("Plaintiff") motion for partial summary judgment against Bernarda M. Arancedo ("Defendant"). [D.E. 66]. Defendant responded to Plaintiff's motion on July 16, 2018 [D.E. 72] to which Plaintiff replied on July 23, 2018. [D.E. 73]. Therefore, Plaintiff's motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.[1]

## I. BACKGROUND

 On January 2, 2017, Plaintiff filed suit under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA"). [D.E. 1]. Plaintiff claims that she had an employer-employee relationship with Defendant from January 23,

_____

[1] On March 21, 2017, the parties consented to the undersigned Magistrate Judge's jurisdiction. [D.E. 22].

1

2012 through December 30, 2016. Plaintiff's earnings purportedly fell below the Federal and Florida minimum wage for the services she performed as a live-in maid at Defendant's personal residence. Defendant denies all of Plaintiff's allegations. In her motion for partial summary judgment, Plaintiff argues (1) that Defendant's cost-credit arguments to reduce damages should be rejected, (2) that her employment should be covered under the FLSA, (3) that Defendant was her employer, and (4) that she was an employee and not an independent contractor.

## II.  APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56 (c)(1).  "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine

issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94)).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. ANALYSIS

### A. Whether Plaintiff is an employee or an independent contractor

To prevail on a claim for a violation of the FLSA's overtime pay requirements, Plaintiff must prove the elements of (1) failure to pay overtime

compensation, (2) to employees, (3) covered under the FLSA. 29 U.S.C. §207(a)(1). The FLSA protections only extend to employees, and not independent contractors. *See Scantland v. Jeffry Knight, Inc.,* 721 F.3d 1308, 1311 (11th Cir. 2013). Therefore, summary judgment is contingent on Plaintiff's status as an employee and not as an independent contractor.

The FLSA defines an employee as an "individual employed by an employer" and the term "employ" means "to suffer or permit to work." 29 U.S.C. §203(e)(1), (g). "An entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D&S Farms*, 88 F.3d 925,929 (11th Cir. 1996). The inquiry focuses on the level of economic dependence. *Scantland*, 721 F.3d at 1311-12. "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id.* (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301-02 (5th Cir. 1975)).

In determining whether an individual is an employee, courts consider several factors, such as (1) the degree of control, (2) the opportunity for profit or loss, (3) the investment in equipment or additional personnel required, (4) whether special skills are required, (5) the duration of the working relationship, and (6) the extent to which the service is integral to the alleged employer's business. *Id.* No single factor is determinative. *Id.* The Court must assess the relevant facts "through the lens of 'economic dependence' and decide whether they are more analogous to the 'usual path' of an employee or an independent contractor." *Id.*

## 1. *Economic Dependence Factors*

### *(1) Degree of Control*

The first factor to consider is the nature and degree of the employer's control and the manner in which the work is performed. *Geter v. Galardi S. Enters., Inc.*, 2015 WL 2155721, at *4 (S.D. Fla. May 7, 2015); *Harrell v. Diamond A Entertainment, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997). Here, there is disputed evidence with respect to Defendant's control over Plaintiff's activities. Plaintiff claims that Defendant controlled the nature and degree of her work and that Defendant supervised her to ensure that she was satisfied with the quality. [D.E. 67-1, 104:12-22]. Plaintiff testified that Defendant dictated when she would work and her weekly pay:

> Defendant told me that my rate of pay would be Four Hundred and Fifty Dollars ($450.00) per week. Additionally, Defendant told me that I would be required to work Monday through to and including Friday, and sometimes on Saturdays as well. Defendant told me that I was required to be ready to work at 6:00am.

> During the relevant time period, Defendant was my employer who was responsible for paying my wages, controlled my work and schedule, instructed me on my job duties, and regularly oversaw my work and the quality of same.

> The Defendant would pay me weekly and controlled the nature and degree of work I performed. The Defendant would constantly check, observe, and supervise the quality of my work and would sometimes instruct me to re-do same.

[D.E. 67-2, ¶¶ 7, 11, 26].

Defendant argues that Plaintiff did not have any job duties and that Plaintiff worked independently and supervised herself. Defendant's son, Joaquin Avendaño,

testified that he never saw his mother supervising Plaintiff. [D.E. 73-7, 38:24-39:1].

Defendant also states that Plaintiff determined her own work schedule and responsibilities:

> Q: Did you tell Nancy what days of the week she would be needing to work?
> A: Telling her the days, no.
> . . . .
> Q: When you met with Nancy for the first time, did you tell her what days of the week that she would be required to work?
> A: From Monday to Friday . . . .

[D.E. 73-4, 33:9-12; 33:22-34:1].

> Q: You agreed to pay Nancy $450. Is that per week or per month?
> A: Yes, It's what Nancy wanted.

[D.E. 73-4, 47:5-9].

In this case, there is no written contract between the parties because Plaintiff's hours and responsibilities were governed by an oral agreement and the parties parties disagree as to who set the terms of the agreement. Given the disputed evidence in the record, we are unable to determine the nature and degree of the employer's control.

### (2) Opportunity for profit or loss

The second factor is the employee's opportunity for profit or loss depending on the employee's managerial skill. *Scantland*, 721 F.3d at 1316 (holding this factor weighed in favor of economic dependence where the employee's opportunity for profit or loss depended more upon the employer's provision of work than on the employees' managerial skills). "An individual's ability to earn more by being more

technically proficient is unrelated to an individual's ability to earn or lose profit via his managerial skill, and it does not indicate that he operates his own business." *Id.* The record shows that Plaintiff's work did not require her to exert any managerial skills, especially not in a way that impacted her opportunity for profit or loss.

Defendant claims that Plaintiff was not economically dependent because Plaintiff worked for other employers during the time she worked for Defendant. [D.E. 73 at 13]. For example, Defendant testified that Plaintiff worked for another home on Wednesdays. [D.E. 73-4, 68:3-69:8]. However, within that same testimony, Defendant stated that she was unaware of the nature of Plaintiff's outside work:

> Q: So there are no records that reflect the amount of hours that Nancy worked?
> A: There are no records of hours, but there's myself, my children. We know what she did, a little. And if she wasn't in my house, if she was not in my house she would be at CVS or at the doctors, on Wednesdays. Or some Wednesdays, she would work for someone else, I think. I have for a gentleman that I know.
> . . . .
> Q: Do you know what the nature of the work was that you allege that Nancy did for Sarah's husband on Wednesdays?
> A: No. I would have to call and ask.

*Id.*

Additionally, both parties present conflicting evidence on how Plaintiff's wages were determined and Plaintiff's obligation to remain in Defendant's home regardless of whether Plaintiff had completed her duties, limiting Plaintiff's opportunities to seek other employment. Plaintiff, for example, testified that she was expected to complete her tasks even when Defendant was out of town. [D.E. 73-6, 104:19-105:1]. However, Defendant testified that Plaintiff was free to do whatever she wanted whenever the house was empty. [D.E. 73-4, 44:15-45:8]. Based

on the disputed evidence in the record, we cannot determine whether this factor favors Plaintiff or Defendant.

### (3) Investment in equipment or additional personnel required

The third factor is the employee's investment in equipment or materials required for work and whether additional personnel are required. *See Scantland*, 721 F.3d at 1317. A worker constitutes an independent contractor when he or she invests in equipment or materials required for completing their tasks, or hires other workers to assist them. *Id.* Plaintiff claims that Defendant owned and purchased all of the equipment Plaintiff used for work, and that Plaintiff had no ability to hire or fire personnel. [D.E. 67 at 8]; [D.E. 67-2, ¶ 15]; *see also Demers v. Adams Homes of NW Fla., Inc.*, 2007 WL 3333440 (M.D. Fla. Nov. 7, 2007) (holding that defendant paying for the majority of plaintiff's supplies weighed in favor of an employer-employee relationship). And Defendant agrees that she paid for all of Plaintiff's supplies. For example, Defendant testified that she would supply Plaintiff with her credit card or cash whenever Plaintiff needed to purchase materials for the home.[2] [D.E. 73-4, 84:9-19]. Based on the undisputed evidence, this factor weighs in favor of finding that Plaintiff was an employee.

### (4) Whether special skills are required

The fourth factor considers whether the work required special skill. *Scantland,* 721 F.3d at 1318. "A lack of specialization indicates that an individual is an employee, not an independent contractor." *Molina v. South Florida Exp. Bankserv, Inc.*, 420 F. Supp. 2d 1276, (M.D. Fla. 2006) (quoting *Halferty v. Pulse*

---

[2]     Defendant did not testify as to Plaintiff's ability to hire or fire personnel.

*Drug Co., Inc.*, 821 F.2d 261, 265 (5th Cir. 1987)). Defendant argues that Plaintiff used her special skills and expertise to complete the assigned tasks and make purchases for the home. [D.E. 73 at 11-12]. But, Defendant undermined her own argument when she testified that Plaintiff did not have any special skills. [D.E. 73-4, 87:16-17]. Testimony from Defendant's children, Joaquin and Benjamin Avedaño, further support Plaintiff's claim that she carried out routine housekeeping tasks that did not require special skills such as cleaning, changing sheets, washing, and ironing. [D.E. 67-2 ¶¶ 9, 12, 27]; [D.E. 52-1,18:5-17; 19:15-20]; [D.E. 52-5, 12:8-13:8]. Because nothing in the record shows that Plaintiff performed any tasks with specialized knowledge, this factor suggests that Plaintiff was an employee.

### *(5) Duration of the working relationship*

The fifth factor considers the degree of permanency and duration of the working relationship. *Scantland,* 721 F.3d at 1318. Courts within our circuit have found that a working relationship "for less than one year is 'transient or itinerant' and signal[s] independent contractor status." *Rezendes v. Domenick's Blinds & Decor*, Inc., 2015 WL 3484835, at *12 (M.D. Fla. June 2, 2015) (quoting *Clincy v. Galardi S. Entertainers*, 808 F. Supp. 1326, 1348 (N.D. Ga. 2011)). Both parties agree that the working relationship between Plaintiff and Defendant was about four years, from January 23, 2012 to December 30, 2016. [D.E. 72 at 4]; [D.E. 86-1 ¶ 4]; [D.E. 67 at 1]. Because it is undisputed that Defendant employed Plaintiff for approximately four years, this factor suggests Plaintiff was an employee.

*(6) The extent to which the service is integral to the alleged employer's business.*

The sixth factor is whether the work performed is integral to the employer's business. If a worker's tasks are integral to the business of the employer, this suggests economic dependence. *Scantland*, 721 F.3d at 1319. In this case, Defendant does not own a business [D.E. 72 at 13] because she testified that she is a housewife. [D.E. 73-4, 14:7-10]. Because Defendant does not own a business, it is implied that Plaintiff's services would need to be integral to the running of Defendant's home. Plaintiff testified that her work was "central and integral in relation to the running of Defendant's residence." [D.E. 67-2, ¶ 29]. But, Plaintiff failed to support that assertion with any substantive explanation.

Defendant also presented conflicting evidence on how important Plaintiff's work was to her home. Defendant testified that Plaintiff's help was necessary during the school week, and that she helped maintain tranquility at the home:

> Q: What was the agreement between you and Nancy?
> A: That she helped me with the house, to make the beds, to keep the bathrooms clean, the three bathrooms. To use, either myself or her, the washing machines. To keep the uniforms ironed during the times that she was in the house, if she could keep them ironed. Everything was tranquil and relaxed.
> . . . .
> Q: You had said earlier that you had agreed that she would work Monday to Friday, correct?
> A: On school days, this is when I most would arrange with Nancy, when I most needed her. She helped me.

[D.E. 73-4, 38:19- 39:4; 39:5-10].

However, Defendant's son, Joaquin Avendaño, testified that Plaintiff was not required to help him get ready for school in the morning, make his lunch, or walk him to the bus stop. [D.E. 52-5, 36:12-16]. Defendant further suggests that Plaintiff's tasks were not central or integral because she had other independent contractors providing services to the home such as cleaning, gardening, and construction. [D.E. 73 at 13]. Defendant fails to provide guidance as to what types of services are central or integral to running her home. Because of the disputed issues of material fact and lack of clarity regarding what services were central or integral to Defendant's home, we cannot give much weight to this fact one way or the other.

## 2. *Weighing all the Factors*

Taken in the light most favorable to Defendant, the nonmoving party, we cannot find as a matter of law that Plaintiff was an employee. The first two factors, control and opportunity for profit, cannot be determined because they include material issues of fact. As for the following three factors—investment in equipment, special skills required, and the duration of the working relationship—all three weigh in favor of finding that Plaintiff was an employee. The final factor, whether the work performed was integral for the employer's business, includes material issues of fact that, together with the first two factors, preclude the Court from deciding whether Plaintiff is an employee as a matter of law. Accordingly, Plaintiff's motion for summary judgment as to whether Plaintiff is an employee or independent contractor is **DENIED**.

## B. *<u>Whether Individual Coverage Applies</u>*

The FLSA requires that an employee who falls within its scope must be paid overtime for all time worked in excess of 40 hours per week. 29 U.S.C. §207(a). "If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).

To invoke the FLSA's protections, "an employee must first demonstrate that he is 'covered' by the FLSA." *Id.* Courts have identified two avenues for coverage: enterprise and individual. Under "enterprise coverage", an employee is protected by virtue of working for an enterprise that is engaged in "commerce" within the meaning of the statute, and that has at least $500,000 in gross annual sales. *See Josendis*, 662 F.3d at 1298-99 (citing 29 U.S.C. §207(a)(1)). An employee who works for a company that does not meet the statutory criteria for "enterprise coverage" may nevertheless be covered as an individual, if "he regularly and 'directly participates in the actual movement of persons or things in interstate commerce,'" *Id.* (citations omitted). Because Defendant is not an enterprise that is engaged in "commerce" with at least $500,000 in gross annual sales, we will only consider whether Plaintiff is entitled to individual coverage.

Individual coverage applies to a plaintiff who provides evidence that he either "(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264,1266 (11th Cir. 2006). Because

Plaintiff never alleged that she produced goods, she must, to survive summary judgment, present admissible evidence that she was "engaged in commerce" within the meaning of the FLSA. *See S.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946) (holding that the employee bears the burden of proof in showing engagement in interstate commerce).

Plaintiff argues that she was engaged in commerce because she was a domestic service employee. The Department of Labor defines domestic service employment as "services of a household nature performed by an employee in or about a private home . . . of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, maids, housekeepers, laundresses, gardeners and the like." 29 C.F.R. § 552.3. Based on the record presented and the definition from the Department of Labor, we conclude that Plaintiff was a domestic service employee.

To prove that she was engaged in commerce, Plaintiff relies on section 202(a) of the FLSA[3], and the Department of Labor regulations governing domestic service employees, specifically 29 C.F.R. §552.99. Under 29 C.F.R. §552.99, domestic service employees are engaged in interstate commerce if they handle "goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce, and also that they free members of the household to themselves to engage in activities in interstate commerce." It is undisputed that

---

[3]     "Congress further finds that the employment of persons in domestic service in households affects commerce." 29 U.S.C. §202(a).

Plaintiff engaged in tasks that involved many of the items listed in 29 C.F.R. §552.99.

Defendant argues that the FLSA does not extend to Plaintiff because Plaintiff only engaged in purely intrastate commerce. Defendant relies on *Navarro v. Broney Auto. Repairs, Inc.*, where the court held that the FLSA did not extend to plaintiff because he engaged in intrastate commerce. 533 F. Supp. 2d 1223, 1226 (S.D. Fla. 2008) ("Plaintiff's in-state purchase . . . of out-of-state [goods] are insufficient to establish individual coverage."). The plaintiff, a car mechanic, was responsible for replacing and installing auto parts. *Id.* at 1225. Many of the auto parts were manufactured out-of-state and sold at local shops. *Id*. The plaintiff claimed that he engaged in interstate commerce because he regularly purchased and utilized out-of-state goods. *Id.* at 1226. The court rejected plaintiff's argument because "the fact that a number of auto parts 'have crossed state lines at a previous time does not in itself implicate interstate commerce.'" *Id.* (quoting *Thorne*, 448 F.3d at 1267) (holding that a customer who purchased an item from a local store is not engaged in commerce even if the store previously purchased the item from out-of-state wholesalers.).

But, *Navarro* does not apply because Plaintiff was a domestic service employee, not a car mechanic and the policy behind the FLSA and its application to domestic service workers is distinguishable. Under the Department of Labor regulations governing domestic service, domestic service employees, such as Plaintiff, who handle goods such as soaps or vacuum cleaners are engaged in

commerce for all purposes. 29 C.F.R. § 552.99. This regulation was enacted to enforce § 202, passed in 1975, to include domestic workers within the scope of the FLSA. Because Plaintiff was a domestic service employee engaged in commerce, Plaintiff's motion for summary judgment, as to the application of individual coverage under the FLSA, is **GRANTED**.

### C. *Whether Defendant is entitled to a cost credit*

Section 203(m) of the FLSA defines a "wage" to include the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities . . ." 29 U.S.C. §203(m). An employer is entitled to credit for the reasonable cost of furnishing certain non-cash items to the employee such as meals and lodging for the employee's benefit, if the employee voluntarily accepts them. 29 C.F.R. §552.100(b). Meal credits are capped at 37.5% of the minimum wage for breakfast, 50% of the minimum wage for lunch, and 62.5% of the minimum wage for dinner. 29 C.F.R. §552,100(c). Lodging credits are capped at seven and one-half times the minimum wage for each week. 29 C.F.R. §552.100(d).

Plaintiff claims that Defendant is not entitled to a meal or lodging credit under 29 U.S.C. §203(m) because Defendant never contacted the Department of Labor and the statute requires that the Administrator determine the "reasonable cost" or "fair value" of the credits. Plaintiff also argues that Defendant is not entitled to cost credits based on the lack of record evidence.

Under the Department of Labor's regulations governing domestic service employees, the interpretation of reasonableness obviates the need for the

Administrator's involvement in approving Defendant's credit. 29 C.F.R. §552.100. The regulations also expressly allow employers to make such determinations of reasonableness in accordance with specific instructions:

> Section 3(m) directs the Administrator to determine "the reasonable cost to the employer of furnishing facilities" to the employee, and in addition it authorizes him to determine "the fair value" of such facilities for defined classes of employees and in defined areas, which may be used in lieu of the actual measure of the cost of such facilities in ascertaining the "wages" paid to any employee. Subpart B contains three methods whereby an employer may ascertain whether any furnished facilities are a part of "wages" within the meaning of section 3(m): (1) An employer may calculate the "reasonable cost" of facilities in accordance with the requirements set forth in § 531.3; (2) an employer may request that a determination of "reasonable cost" be made, including a determination having particular application; and (3) an employer may request that a determination of "fair value" of the furnished facilities be made to be used in lieu of the actual measure of the cost of the furnished facilities in assessing the "wages" paid to an employee.

29 C.F.R. §531.3(a). While the burden is on the employer to establish the reasonableness of the credits, the burden is met by either complying with the FLSA's recordkeeping provisions or seeking the Administrator's determination. *Donovan v. New Floridian Hotel*, 676 F.2d 468, 475 (11th Cir. 1982).

29 C.F.R. § 531.3(c) explains how to make a determination of "reasonable cost" where an employer is not already subject to a determination by the Administrator:

> Except whenever any determination made under § 531.4 is applicable, the "reasonable cost" to the employer of furnishing the employee with board, lodging, or other facilities (including housing) is the cost of operation and maintenance including adequate depreciation plus a reasonable allowance (not more than 5 1/2 percent) for interest on the depreciated amount of capital invested by the employer: Provided, [t]hat if the total so computed is more than the fair rental value (or the

fair price of the commodities or facilities offered for sale), the fair rental value (or the fair price of the commodities or facilities offered for sale) shall be the reasonable cost. The cost of operation and maintenance, the rate of depreciation, and the depreciated amount of capital invested by the employer shall be those arrived at under good accounting practices.

To prove the "fair value" of the lodging credit, Defendant presented multiple affidavits from expert Thania Vernon, a local broker, that estimated the value of Defendant's home and the rental value of Plaintiff's room.[4] [D.E. 72 at 20]. However, Defendant's expert affidavits failed to properly assess the "fair value" of the lodging credit, and merely included the retail value of Defendant's property.[5]

Multiple cases within the Eleventh Circuit have held that the "retail value" of a property is insufficient evidence in determining the "reasonable cost" or "fair value" of a lodging credit. In *Leonard v. Carmichael Props. & Mgmt. Co.*, 614 F. Supp. 1182m 1187-88 (S.D. Fla. 1985), the employer did not meet his burden of establishing a cost credit under 29 U.S.C. §203(m) because "[it] [wa]s impossible for the court to determine what was the reasonable cost of the apartment," and "defendant . . . failed to proffer any evidence as to the expenses of providing it for plaintiff." In *Washington v. Miller*, 721 F.2d 797, 803 (11th Cir. 1983), the Eleventh

---

[4] "The methodology I used . . . for calculating the monthly rent for residential real estate consists of : (1) determining the per square footage rental rate of rented like-in-kind properties by searching for like-in-kind properties to the subject property in the M[ultiple Listing Services] ("Per Square Footage Rental Rate"); (2) calculating an average of the Per Square Footage Rental Rate of the like-in-kind properties to the subject property; and (3) multiplying the average Per Square Footage Rental Rate by the square footage of the subject property whose rental price is to ascertained." [D.E. 74-3].

[5] Defendant's expert report is defective as to the fair value assessment for the reasons set forth in the Order on Plaintiff's *Daubert* Motion.

Circuit found that the defendant failed to provide the "reasonable cost" or "fair value" of the lodging credit because "it [was] not possible from the records introduced by [the employer] as to the expenses of operating the labor camp to determine what was the reasonable cost of the facilities provided." The Court held that it is not the value of the lodging, but the cost to the employer for providing the lodging that is determinative of the lodging credit. *Id.* at 803; *see also Donovan*, 676 F.2d at 475 ("[A]n employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, . . . does not satisfy the employer's burden of proving reasonable cost."); *Caro-Galvan v. Curtis Richardson, Inc,* 993 F.2d 1500, 1514 (11th Cir. 1993) (finding that the employer bears the burden of proving reasonable cost and that the "employer's unsubstantiated estimate of his cost" does not meet that burden).

Under 29 U.S.C. § 516.27(b), Defendant must maintain and preserve contemporaneous records substantiating the cost of furnishing lodging as well as other comprehensive records "showing additions or deduction from wages paid for boarding, lodging, or other facilities on a work week basis." *Donovan,* 676 F.2d at 475. The Eleventh Circuit in *Donovan* rejected the employers' effort to deduct the cost of meals and lodging because they failed to maintain the records required by the FLSA regulations. *Donovan*, 676 F.2d at 473. ("[Defendants] failed to sustain their burden of proving 'reasonable costs' of the meals and lodging by producing records or other credible evidence.").

Here, Defendant has failed to provide the necessary records for a cost credit as required under the FLSA regulations, specifically 29 C.F.R. §§ 516.27(a) and 531.3(c). Defendant relies instead on section 516.27(a). But, Defendant's argument regarding section 516.27(a) is inapposite because it still requires that Defendant produce the necessary records. Section 516.27(a) states that "[s]eparate records of the cost of each item furnished to an employee need not be kept. The requirements may be kept by keeping combined records of the costs incurred in furnishing each class of facility . . ." However, Defendant failed to provide any combined records of the costs incurred in furnishing Plaintiff's meals or room under section 516.27(a). Therefore, Defendant's reliance on section 516.27(a) is misplaced.

Instead of providing the necessary records, Defendant argues that a published guidance memorandum by the United States Department of Labor: Wage and Hour Division on lodging credits under 29 U.S.C. §203(m), includes requirements that present material issues of fact ("DOL Memo"). [D.E. 72 at 18-20]. Defendant claims that the material issues of fact[6] bar this Court from deciding this issue on summary judgment. We will not consider the DOL Memo because the language of 29 U.S.C. §203(m) is straightforward. When interpreting a statute, the court must first start with the plain meaning of the statute to "give effect to the

---

[6]    Defendant argues that in determining the requirements from the DOL Memo, there are material issues of fact. The DOL Memo lists five requirements an employer must meet to claim §203(m) credit: (1) the lodging is regularly provided by the employer or similar employers; (2) the employee voluntarily accepts the lodging; (3) the lodging is furnished in compliance with applicable federal, state, or local law; (4) the lodging is provided primarily for the benefit of the employee rather than the employer; and (5) the employer maintains accurate records of the costs incurred in furnishing the lodging." *Id.*

unambiguously expressed intent."[7] *Chevron, U.S.A., Inc., v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). This approach is consistent with the presumption that Congress said what it meant and meant what it said. *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1167 (11th Cir. 2003). "In our circuit, '[w]hen the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.'" *United States v. Weaver,* 275 F.3d 1320, 1331 (11th Cir. 2001) (quoting *Harris v. Garner,* 216 F.3d 970, 976 (11th Cir. 2000)). Because the law is clear on the requirements necessary to obtain a cost credit and Defendant has failed to meet that burden, Plaintiff's motion for partial summary judgement is **GRANTED**.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion for partial summary judgment [D.E. 66] is **GRANTED** in part and **DENIED** in part[8]:

---

[7]     *See Credit toward Wages under Section 3(m) of the FLSA for Lodging Provided to Employees,* Field Assistance Bulletin No 2015-1, U.S. Dept. of Labor, Wage and Hour Division, Dec. 17, 2015 at https://www.dol.gov/whd/FieldBulletins/fab2015_1.htm

[8]     On July 24, 2018, Plaintiff filed a motion to strike Defendant's statement of disputed material facts because (1) it introduces new facts but does not support them with specific references in the record, and (2) the additional facts are not numbered and included at the end of Defendant's factual statement.  [D.E. 79]. Plaintiff's motion is **DENIED** because Defendant materially complied with the Rule's requirements.   As for Defendant's request for sanctions, Defendant's motion is also **DENIED**.

A. Plaintiff's motion on whether Plaintiff is an employee or independent contractor is **DENIED**.

B. Plaintiff's motion on whether Plaintiff is entitled to coverage under the FLSA is **GRANTED**.

C. Plaintiff's motion on whether Defendant is entitled to a cost-credit is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of September, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge